## UNITED STATES *v.* BARNES.

*Court, S. D. New York.* July 16, 1887.)

**1. BANKRUPTCY—CLAIMS AGAINST ESTATE—PRIORITY OF UNITED STATES—LIABILITY OF ASSIGNEE.**

The priority of the United States, in cases of the bankruptcy or insolvency of their debtors, under the provisions of sections 3466 and 3467 of the Revised Statutes, extends to all classes of debts, and to all the debtor's estate which comes to the hands of his assignee. The assignee becomes a trustee for the United States, and, when he has notice of the debt due the government, he cannot escape personal liability for the amount of it, to the extent of the value of the assets coming to his hands, if he fails to provide for it before making distribution to other creditors.

**2. SAME—JUDGMENT AS A DEFENSE.**

The judgment of a court of competent jurisdiction, directing such distribution, will afford the assignee no justification, in such a case, where it does not appear that the United States were made a party to the proceeding in which such judgment was rendered.

**3. SAME—OMISSION TO PROVE CLAIM.**

The United States, by omitting to prove its claim in the bankruptcy proceedings until after such distribution is made, does not lose its right to proceed against the assignee personally. The doctrines of waiver, laches, and estoppel cannot be invoked against the sovereign.

*Abram J. Rose*, Asst. U. S. Atty., for plaintiffs in error.
*Joseph A. Shoudy*, for defendant in error.

WALLACE, J. This is a writ of error brought by the plaintiffs to review a judgment of the United States district court in favor of the defendant. The suit was brought to recover $32,000, with interest from September 12, 1871,—moneys paid out by the defendant on that date as assignee in bankruptcy of Theodore H. Vetterlein and Bernhard P. Vetterlein, as a dividend to creditors, which moneys, upon the theory of the plaintiffs, the defendant should have retained, and applied to pay the United States as a creditor of the bankrupts having priority over all other creditors. The cause of action arises under sections 3466 and 3467 of the United States Revised Statutes. Section 3466 provides that whenever any person indebted to the United States is insolvent, the debt due to the United States shall be first satisfied, and that the priority thereby established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, as well as to cases in which an act of bankruptcy is committed. Section 3467 provides that every assignee or other person

who pays any debt due by the person or estate from whom or for which he acts, before he satisfies and pays the debt due to the United States from such person or estate, shall become answerable in his own person or estate for the debt so due to the United States, or for so much thereof as may remain due and unpaid.

The complaint avers that the Vetterleins were adjudicated bankrupts on the seventh day of February, 1871, in the district court of the United States for the Southern district of New York; that the defendant was on the first day of March, 1871, and ever since has been, the assignee in bankruptcy of the Vetterleins; that at the time the Vetterleins were adjudicated bankrupts they were jointly and severally indebted to the United States in the sum of $99,951, and their estate was insufficient to pay their debts; that at and prior to the twelfth day of September, 1871, the defendant had notice of the indebtedness of said bankrupts to the United States; that on that day, having in his hands as such assignee assets to the sum of $32,000 and upwards, the defendant distributed and paid the same to creditors of the bankrupts other than the United States before he had satisfied or paid the debt due to the United States; and that the entire assets of the bankrupts remaining after said dividend was paid were insufficient to pay the debt due to the United States by more than the sum of $32,000.

The evidence upon the trial sustained the averments of the complaint, except that it did not show that the defendant was aware at the time of paying out the $32,000 of the precise nature or extent of the demand existing against the bankrupts in favor of the United States. It appeared, however, that in July, 1869, the United States had brought a suit in the United States district court for the Southern district of New York against the Vetterleins, to recover an alleged indebtedness of $540,-000 for the violation of the customs revenue laws, and that the defendant acquired notice of the pendency of this action after he was appointed assignee, and prior to the distribution of the $32,000. It further appeared by the evidence upon the trial that the United States did not intervene in the bankruptcy proceedings, or take any steps to establish their claim, until a time subsequent to the distribution of the $32,000; that April 19, 1872, a judgment was entered in the pending suit in favor of the United States against the Vetterleins upon a *cognovit* for $99,951; and that on or about April 2, 1878, the claim and proof of debt of the United States, as a creditor of the bankrupts, was allowed and established upon the application of the attorney for the United States in the bankruptcy proceeding as a debt against the estate of the bankrupts jointly, for $99,951, with priority of payment next after the fees, costs, and expenses of the proceedings in bankruptcy. The defendants put in evidence the order of the court in the bankruptcy proceeding, passing the final account of the assignee. The proceedings upon which this order was founded showed that in April, 1883, the government appeared by the United States attorney, and filed objections to the account, and after proofs the court found a balance of cash in hand of the assignee, after deducting from the moneys received by him all charges, claims, and allow-

ances, as the net cash surplus of the joint assets of the bankrupts, the sum of $27,283. This sum the court ordered to be paid to the United States. At the close of the evidence it was agreed by counsel for the respective parties that there was no question of fact to be submitted to the jury; and the counsel for the plaintiffs asked the court for a peremptory instruction to the jury to render a verdict for the plaintiffs, and the counsel for the defendant asked a like instruction that they render a verdict for the defendant.

The court instructed the jury to render a verdict for the defendant, and the plaintiffs excepted. The plaintiffs in error now rely upon this exception as the ground for a reversal of the judgment.

The provisions of law giving priority to the United States in cases of insolvency, now embodied in sections 3466 and 3467 of the Revised Statutes, originated in the act of congress of 1797, as supplemented by the act of March 2, 1799, and have frequently been considered by the courts. It is established by many adjudications, in which the meaning and effect of these provisions have been discussed, that such priority extends to all classes of debts, whether liquidated or unliquidated, joint or several, legal or equitable; and when the insolvent debtor has made a voluntary general assignment, or committed an act of bankruptcy, that such priority extends to all his estate which comes to the hands of his assignee. The assignee becomes a trustee for the United States, and is bound to pay their debt first out of the proceeds of the debtor's property. When he has notice of the existence of the debt of the United States, he cannot escape personal liability for its amount, to the extent of the value of the assets that come to his hands, if he fails to provide for it before making distribution to other creditors. Such is the rigor of the statute that he cannot invoke the judgment of a court of competent jurisdiction directing him to distribute the assets to specified creditors as a justification, when it does not appear that the United States were a party to the proceeding, or that he took proper measures to secure the priority of the United States in the distribution. *Field* v. *U. S.*, 9 Pet. 182.

The evidence for the plaintiffs upon the trial made a case for a recovery against the defendant directly within the letter of the statute. The debt of the United States against the Vetterleins was shown to have been established, and its priority over the claims of all other creditors adjudicated, in the bankruptcy proceedings,—an adjudication which was conclusive against the defendant, who was a party to it, as the assignee of the bankrupts' estate. Notice to the defendant of the existence of the debt of the United States prior to making distribution of the $32,000 was brought home to him by evidence showing that he knew of the existence of the suit which was then pending to recover of the Vetterleins, brought by the United States. Information which puts a party upon inquiry, and shows where the inquiry may be effectually made, is notice of all facts to which such inquiry might have led. The payment of the $32,000 to other creditors, and the fact that the remainder of the estate which came to his hands was insufficient by more than the sum

of $32,000 to satisfy the debt of the United States, was also proved.
Thus every element of a case within the sections referred to was made
out.   The order of the court made upon the passing of the assignee's
final account was not an adjudication in favor of the defendant that the
$32,000 paid out by him before the government proved its claim in bank-
ruptcy was a valid payment as against the government.   No such ques-
tion as this was raised or litigated under the objections filed by the government
to the assignee's account.   The subject-matter of that proceeding
was the distribution of the fund then in the possession and control of
the assignee; and all that the court undertook to determine was whether
the assignee was entitled to certain allowances out of that fund for moneys
disbursed, and for his own compensation, and what disposition should
be made of the residue.

The ruling of the court that the plaintiffs were not entitled to recover
went upon the ground that the government, by omitting to prove the
claim of the United States in the bankruptcy proceedings until after the
distribution of the $32,000, lost its right to proceed against the defend-
ant.   This was the only ground upon which the decision was put, and
it is the only ground upon which the correctness of the ruling can be
vindicated.   The learned district judge was of the opinion that claims
of the United States against the estates of a bankrupt, or against the as-
signee in bankruptcy, must be worked out in the bankruptcy proceed-
ing.   He was also of the opinion that the government, by its non-action
in asserting its claim until after the distribution had been made, waived
its right to proceed against the assignee personally.   The decisions of
the supreme court in *U. S.* v. *Herron*, 20 Wall. 251, and *Lewis* v. *U. S.*,
92 U. S. 618, dispose of the suggestion that the United States must
pursue their remedy in the bankruptcy proceeding, and refute the prop-
osition that the rights of the United States are in any way affected by a
proceeding in bankruptcy against their debtor.   The result of these de-
cisions is that although, under the bankrupt act of 1867, the United
States may prove their debt, and assert their priority in the proceeding
in the bankrupt court, they are under no obligation to do so, but stand
in the category of creditors who are not affected by the proceeding.   The
principle of the decision in *U. S.* v. *Herron* is that the term "creditor or
creditors," as used in the bankrupt act, does not include the United
States; because, as the king is not bound by an act of parliament, so the
government of the United States is not bound by an act of congress which
may tend to restrain or diminish any of their prerogatives, rights, or
interests, unless the statute is made by express and particular words to
apply to the sovereign power.   In *Lewis* v. *U. S.* the court considered
the effect of the clause in the bankrupt act providing for priority of pay-
ment to the United States, and said:

"The United States are in no wise bound by the bankrupt act.   The clause
above quoted is *in pari materia* with the several acts giving priority of pay-
ment to the United States, and was doubtless put in to recognize and reaffirm
the rights which those statutes give, and to exclude the possibility of a dif-
ferent conclusion."

If the United States are under no obligation to assert their right of priority against the bankrupt's estate in the bankruptcy proceeding,—a question no longer open, according to the decisions referred to,—it is difficult to see upon what principle their omission to do so can be deemed the foundation of a waiver or estoppel. It may seem unjust that the government should stand by while the estate of its insolvent debtor is being distributed by an assignee pursuant to the directions of a court of bankruptcy, without asserting its right of priority, and, when the assignee has made final distribution, pursue him, and compel him to make good out of his own pocket what it might have realized from the estate if it had proved its claim in season. It is not in the power of the assignee to set the government in motion, because the bankrupt law does not provide any machinery by which he can do so; and unless the government elects to assert its claim in the bankruptcy proceeding, the distribution of the estate may be protracted, and those who are entitled to share in the assets be delayed. But, however real may be the hardship, the remedy is with the legislative authority, and not with the courts. Congress has seen fit not to require the government to make itself a party to a bankruptcy proceeding against its debtor, and assignees and creditors must abide the consequences. But the hardship is theoretical, rather than real. The assignee can ascertain, if he uses reasonable diligence, what part of the estate should be reserved to meet the claim of the government, and the rest of the estate can be distributed to the other creditors; and it is only when the assignee has notice of the claim of the government that he incurs personal liability for making distribution of the estate without providing for the claim.

The doctrine of laches or equitable estoppel cannot be invoked for the protection of the defendant. Laches, however gross, cannot be imputed to the government. The maxim is founded not in the notion of extraordinary prerogative, but upon great public policy. *U. S.* v. *Kirkpatrick,* 9 Wheat. 735; *Dox* v. *Postmaster General,* 1 Pet. 318; *Jones* v. *U. S.,* 18 Wall. 662; *Cooke* v. *U. S.,* 91 U. S. 389; *Hark* v. *U. S.,* 95 U. S. 316.

The defendant knew, or was bound to know, that he could not safely distribute any part of the estate of the bankrupts which came into his hands until the claim of the government should be satisfied. If he acted in ignorance of the law, or was badly advised by counsel, this is not a defense to the action which the statute gives. If there are any circumstances of peculiar hardship growing out of the conduct of any of the officers of the government in reference to the prosecution of the claim, or arising from the nature of the original claim against the Vetterleins, or in consequence of the conduct of the Vetterleins in assisting the government to establish a doubtful claim against them, so that their general creditors or the assignee should suffer loss, the defendant must appeal to to the legislative or administrative authorities for relief.

The judgment of the district court is reversed.