Minnie Viles, administratrix of the Estate of Cloyd H. Viles, deceased v. Commissioner. Harvey Viles v. Commissioner. Inez Viles Whaley v. Commissioner. Minnie Viles v. Commissioner.
Viles v. Commissioner
Docket Nos. 41737-41739, 43933.
United States Tax Court
T.C. Memo 1955-142; 1955 Tax Ct. Memo LEXIS 199; 14 T.C.M. (CCH) 525; T.C.M. (RIA) 55142; May 31, 1955
L. C. Ely, Esq., Myron Ray Ely, Esq., 406 West Church Street, Knoxville, Tenn., and Harold B. Stone, Esq., for the petitioners. Lester R. Uretz, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The respondent has determined deficiencies in the income tax of Cloyd H. Viles, deceased, and additions to tax under sections 291(a) and 293(a) of the Internal Revenue Code of 1939 as follows: Addition
Addition
Docket
to tax sec.
to tax sec.
No.
Year
Deficiency
293(a)
291(a)
Minnie Viles,
Administratrix of the
Estate of Cloyd H. Viles,
41737
1947
$4,102.84
$205.14
Deceased
1948
5,531.85
276.59
1949
3,677.49
183.87
$919.37
The respondent *200 further has determined that Minnie Viles (Docket No. 43933) as fiduciary of the Estate of Cloyd H. Viles, deceased, is personally liable under section 3467, Revised Statutes, to the extent of the amount of the deficiencies in tax and additions to tax, plus interest as provided by law. The respondent also determined that Harvey Viles (Docket No. 41738) is liable as transferee of property of the Estate of Cloyd H. Viles, deceased, for the above-mentioned deficiencies and additions to tax to the extent of $3,773.86. The respondent made a like determination with respect to Inez Viles Whaley. Issues presented for determination are the correctness of the respondent's action (1) in failing to determine that Cloyd H. Viles, deceased, had no income in 1947 and 1948 in excess of that reported for those years and that he had no taxable income in 1949, (2) in determining that Minnie Viles is personally liable under section 3467, Revised Statutes, to the extent of the deficiencies in tax and additions to tax of Cloyd H. Viles, deceased, for the years 1947, 1948 and 1949, and (3) in determining that Harvey Viles and Inez Viles Whaley are liable as transferees of property of the Estate of Cloyd *201 H. Viles, deceased, for portions of the deficiencies in tax and additions to tax for 1947, 1948 and 1949. Findings of Fact Cloyd H. Viles resided in Knoxville, Knox County, Tennessee, during 1947 through 1949 and died intestate and a resident of that city and county on January 8, 1950. He filed individual income tax returns for 1947 and 1948 with the collector at Nashville, Tennessee. An income tax return for 1949 was not filed by or on behalf of the decedent. On January 15, 1950, letters of administration were issued to Charles A. Maner and Norma Viles by the County Court for Knox County, Tennessee, naming them as administrators of the estate of the decedent. By order of the same court, dated April 4, 1950, Charles A. Maner and Norma Viles were discharged as administrators of the estate and petitioner Minnie Viles, mother of the decedent, was appointed successor administratrix. None of the assets of the estate had been distributed by the discharged administrators. In October 1935 the decedent married Edith Christian and in May 1945 she divorced him. By the last part of 1947 she had married one Hyder and the decedent had married Norma Jean Davis. In 1948 the decedent and Norma *202 Jean Davis Viles were either divorced or their marriage annulled. Thereafter in 1948 they were remarried. Although Norma Jean Davis Viles originally was appointed as an administrator of the decedent's estate, she was removed because she was unable to establish that after having been divorced from decedent in August 1949 she subsequently was remarried to him and was his lawful widow. Petitioner Harvey Viles is a brother of the decedent and petitioner Inez Viles Whaley (now Tavui) is a sister of the decedent. Harvey Viles and Inez Viles Whaley are the children of Minnie Viles. From February 23, 1938 until October 8, 1942, the decedent was incarcerated in the Federal penitentiary, Atlanta, Georgia. He was released conditionally from the penitentiary on October 8, 1942, and placed on probation until February 22, 1945. Upon being so released the decedent returned to live with his then wife, Edith. During the period the decedent was on probation he filed monthly supervision reports. Since decedent was unable to read or write, Edith assisted him in the preparation of the reports. In these reports, with the exception of the first two in which he stated that he was unemployed, the decedent *203 reported that he was employed as a truck driver. The wages reported as having been received ranged from a low of $35.20 for the month of January 1943 to a high of $97.59 for the month of November 1944. The expenditures reported as having been made for food and other items for the various months equalled the amounts reported as having been received for the same months except for the month of November 1943 for which $20 was reported as having been saved. The records of the office of the collector for the district of Tennessee do not disclose that the decedent filed an income tax return for 1942. For 1943 he filed a return showing no tax liability. For 1944 he filed a return showing a tax liability of $57 of which $51.83 was paid by withholding from his wages. For 1945 he filed a return showing no tax liability and with respect to which he was refunded $27.70 which had been withheld. There is no record of a return having been filed by him for 1946. For 1947 and 1948 the decedent filed returns in which he stated that his occupation was that of "Retail Whiskey Dealer" and the only income reported for either year was shown as having been derived from that business. For 1947 an adjusted *204 gross income of $1,480 was reported and a tax liability of $91.20 was entered on the return. For 1948 an adjusted gross income of $4,680 was reported and a tax liability of $133 was entered on the return. Howard Thomas, a revenue agent, was assigned to investigate the income tax liability of the decedent for 1947 and 1948. After a letter addressed to the decedent, dated January 10, 1950, was returned to him undelivered and after learning of the death of the decedent and the appointment of Charles A. Maner as one of the administrators of decedent's estate, Thomas contacted Maner for the purpose of examining any books and records maintained by the decedent with respect to his income. Maner advised Thomas that he had no books or records of the decedent. In May 1950 and subsequent to her appointment as administratrix, Thomas contacted Minnie Viles with respect to the tax liability of the decedent and examining his books or records but, so far as could be ascertained, the decedent maintained no books or records. In view of this and since no return had been filed for 1949, Thomas extended his investigation to decedent's income tax liability for that year. In the absence of books or records, *205 Thomas determined the decedent's income for the years in question on the basis of cash disbursements. In so doing, he computed unreported income for the respective years as follows: 1947
1948
1949
Cash expended in automobile
purchases: 1947 Cadillac Sedanette
$ 3,315.00
purchased December 1947
1947 Chrysler New Yorker
$ 2,000.00
purchased April 26, 1948
1949 Ford Buster Club Coupe
$ 742.56
purchased July 5, 1949
Real estate purchased, cash
$26,125.00
expended in 1948
Deduct cost price of property
3,500.00
sold in 1948 for $3,700
Increase
$22,625.00
Allocated increase of
$22,625.00 to 1947 and 1948
on basis of gross
receipts reported in 1947 and
8,514.32
14,110.68
1948 income tax returns
Furniture purchased
7,221.84
Cash paid to divorced wife in
3,000.00
property settlement
Estimated living expenses
4,000.00
4,680.00
4,500.00
Adjusted gross income
$15,829.32
$20,790.68
$15,464.40
Adjusted gross income
1,480.00
4,680.00
None
reported
Income not reported
$14,349.32
$16,110.68
$15,464.40
On or about July 15, 1950, and prior to the submission to his superior of his report *206 in which he proposed a determination of the decedent's tax liability on the basis of unreported income computed as set out above, Thomas had a conference with Minnie Viles and L. C. Ely, her attorney. During the conference, Thomas showed them the report, discussed with them the adjustments made therein and the resulting tax liability, and advised Minnie Viles that no distribution should be made of the remaining assets of the estate of the decedent until the tax liability of the estate was settled. On July 3, 1951, the County Court for Knox County, Tennessee, approved the final settlement of the estate of the decedent and discharged Minnie Viles as administratrix. The final settlement as approved by the county court shows receipts and disbursements by Minnie Viles as administratrix of the decedent's estate as follows: RECEIPTS
Sale of furniture
$ 2,000.00
Sale of Ford automobile
1,300.00
Sale of real estate
18,006.08
Interest from Home Federal Sav-
ings & Loan
95.64
Refund on inheritance tax
31.41
$21,433.13
DISBURSEMENTS
Rose Funeral Home, paid by Har-
vey Viles
$ 2,126.83
Harvey Viles
4,203.54
Dr. David H. Waterman
1,000.00
Lum Reeder, trustee, 1949 taxes
163.79
Mrs. Carrie Lee Downey, nurse
50.00
Mrs. Mary Armstrong, nurse
53.50
Mrs. Marie Hartman, nurse
50.00
South Knoxville Monument Co. for
monument
400.00
South Knoxville Monument Co. tax
on monument
8.00
Dept. of Finance & Taxation inh.
tax
700.00
East Tennessee Baptist Hospital
683.00
Acuff Clinic
58.00
Dr. William Forrest Powell
65.00
Rogers & Company
66.47
Watson Plumbing & Heating Com-
pany
15.75
Dr. Dan Thomas
25.00
Hurley, Wright & Powell - bond
60.00
Mrs. Minnie Viles, administratrix
fee
1,000.00
Ely & Ely, attorneys - fee
1,500.00
Jack W. Dance, clerk
9.50
Inez Viles Whaley, sister - partial
dist.
3,000.00
Harvey Viles, brother, partial dist.
3,000.00
Ethel Viles Warren, child of de-
ceased brother, 1/5 of 1/3
600.00
Louise Viles Lowe, child of de-
ceased brother, 1/5 of 1/3
600.00
Juanita Joyce Moore, child of de-
ceased brother, 1/5 of 1/3
600.00
Floyd W. Viles, child of deceased
brother, 1/5 of 1/3
600.00
Roy K. Viles, child of deceased
brother, 1/5 or 1/3
600.00
Inez Viles Whaley - final distribu-
tion
773.86
Harvey Viles - final distribution
773.86
Ethel Viles Warren - final distribu-
tion
154.78
Louise Viles Lowe - final distribu-
tion
154.77
Juanita Joyce Moore - final distri-
bution
154.77
Floyd W. Viles - final distribution
154.77
Roy K. Viles - final distribution
154.77
[$23559.96]
[1] $21,433.13
*207 Minnie Viles, as administratrix of the estate of the decedent, completed distribution of all the assets of the estate on July 3, 1951. The distribution of the assets of the estate by Minnie Viles rendered the estate without assets and unable to pay the deficiencies in tax and *208 additions to tax involved here. Such deficiencies in tax and additions to tax have never been paid. Petitioner Inez Viles Whaley, as beneficiary of the estate of the decedent, received distributions of property from the estate in the total amount of $3,773.86. Petitioner Harvey Viles, as beneficiary of the estate of the decedent, received distributions of property from the estate in the total amount of $3,773.86. In determining the deficiencies in tax and additions to tax in controversy here, the respondent determined that the decedent, during the respective taxable years, had unreported income in the amounts computed by revenue agent Thomas. Opinion The petitioners take the position that the decedent reported the full amount of his taxable income, if any he had, for each of the taxable years 1947 through 1949. In support of their position they contend that on January 1, 1947, the decedent had on deposit with other persons money and property in the total amount of $44,000, composed of $24,000 cash on deposit with Edith Hyder, $15,000 cash on deposit with Inez Viles Whaley, and $5,000 represented by real estate owned by decedent and title standing in the name of Minnie Viles, *209 which when added to the adjusted gross income of $1,480 reported for 1947 and the $4,680 reported for 1948 gives a total of $50,160 which by the end of 1948 the decedent had available for expenditures; that during the years 1947 through 1949 the decedent expended a total of $38,904.40 with respect to automobiles, real estate, and settlement with divorced wife, as determined by respondent, and in addition to the foregoing expended $1,200 a year or $3,600 for the three years for living expenses, or total expenditures of $42,504.40; that, therefore, it is apparent that the funds and property on hand on January 1, 1947, plus the income reported for 1947 and 1948 was $7,656.60 in excess of the total expenditures for the years 1947 through 1949; and that, accordingly, we should find that the respondent's determination of the deficiencies in tax and additions to tax for those years was erroneous, arbitrary and excessive. In support of their contention that on January 1, 1947, the decedent had on deposit with other persons money and property in the total amount of $44,000, the petitioners rely on the testimony of Edith Hyder, petitioner Inez Viles Whaley, her son-in-law, Charles Chesney, *210 and petitioner Harvey Viles. Edith Hyder, who married decedent in October 1935 and divorced him in May 1945, testified that at the time the decedent was sent to the penitentiary on February 23, 1938, he deposited with her $10,000 in currency in denominations of $1, $5, $10, $20, $50, $100 and $1,000, with instructions to keep it until his return but for her to use such of it as she needed; that she thereafter kept the money in a cedar chest; that from the time of the decedent's departure to the penitentiary until his return therefrom about October 8, 1942, she stayed variously with her mother, with Minnie Viles, the decedent's mother, and with her (Edith Hyder's) sister; that during such time she had no source of income, did not work anywhere, and her brothers and sisters provided her support; that Minnie Viles had no source of income, applied for public relief but did not get it, and obtained help from her daughter. Edith Hyder further testified that she never used any of the $10,000 and never gave any of it to Minnie Viles; that her (Edith Hyder's) parents and brothers and sisters knew she had the money as did Minnie Viles and her daughter. She further testified that she assisted *211 in preparing the decedent's probation reports while he was on probation during the period from October 1942 to February 1945 and that during such period the decedent had income other than his wages as a truck driver and brought her money obtained from sources other than his wages. Although the probation reports contain spaces for reporting money received as wages, or from borrowings, or from relief agency, or from investment, or from other source, the reports filed by decedent show wages received by decedent as a truck driver as the only source from which the decedent had received any money. The amounts of wages shown in the reports range from $35.20 per month for the month of January 1943 to $97.59 per month for the month of November 1944. Edith Hyder also testified that from the time the decedent returned from the penitentiary in October 1942 until the last part of 1946, or January or February 1947, the decedent deposited further sums of money with her sufficient with the $10,000 heretofore mentioned to total $24,000; that she continued to keep the $24,000 until decedent called for it in 1948; that in 1948 she gave him $4,000 at one time, $19,300 a few months later and $700 a day *212 or so after that. In this connection it is to be observed that for the years 1942 through 1946 the decedent paid an income tax for only one year, 1944, and that was in the amount of $57. For the other years he either filed no returns or filed returns disclosing no tax liability. Charles Chesney testified that during the spring or summer of 1948, and at the request of decedent, he accompanied him to the home of Edith Hyder for the purpose of counting some money; that while there he (Chesney) counted $19,300 in currency in denominations of $1,000, $100, $20, $10, $5 and "a lot of" $1's; that after the money was counted the decedent took it away with him. Chesney did not know to whom the money belonged, how it came to be at the Hyder home, or how long it had been there, or what the decedent did with it after he took it away. Chesney also stated that he, pursuant to an understanding reached by decedent and Edith Hyder at the time the $19,300 was counted, returned to the Hyder home a few days later; that on the latter occasion he was accompanied by Harvey Viles to whom Edith Hyder paid $700, which he (Chesney) understood was to be turned over to the decedent. Petitioner Inez Viles Whaley, *213 sister of the decedent, testified that at the time the decedent went to the penitentiary he deposited with her $10,000 in currency, consisting of ten $1,000 bills, to keep for him until his return from the penitentiary and that she carried the money in her bosom day and night; that after his return from the penitentiary decedent at various times during the years 1944, 1945 and 1946 deposited with her additional sums of money, totaling $5,000, in denominations of $20, $50 and $100 and that she kept this money in the light globe in the hall of her house; that she continued to keep the $10,000 and the $5,000 until some time in 1947 prior to Thanksgiving Day of that year when at her request the decedent took back the money. She also testified that the decedent, prior to his departure to the penitentiary, deposited $10,000 with Edith Hyder, which the latter took from a shoe box in a clothes closet and showed her on one occasion. In contrast with her foregoing testimony as to money left with her by decedent, in an affidavit executed in 1951 Inez Viles Whaley stated that in 1945 and 1946 the decedent left with her on different occasions various sums of money and that he continued to do so *214 until he had deposited with her $15,000 and that she delivered the last of the money to him in November 1947. At the hearing herein she admitted to having engaged in the business of selling whiskey at retail contrary to law since April 1944. Aside from a statement by the decedent before going to the penitentiary in 1938 that "he had some money" and aside from having received $700 from Edith Hyder for the decedent, Harvey Viles, who had been convicted for conspiracy and counterfeiting and incarcerated in the penitentiary at Atlanta, Georgia, in 1938, had no knowledge of the above-mentioned $24,000 testified to by Edith Hyder or the $15,000 testified to by Inez Viles Whaley. Edith Hyder testified that prior to the time the decedent went to the penitentiary he purchased a five-room house at 235 Leslie Street in Knoxville; that title to the property was taken in the name of decedent's mother; that the decedent owned the property in 1945 when she divorced him; that later the property was sold by decedent's mother and decedent got $5,000 for it. Inez Viles Whaley testified that the decedent owned the Leslie Street property prior to going to the penitentiary; that title to the property *215 was in the name of the decedent's mother; that the decedent sold the property in 1947, 1948 or 1949 and said he received $5,000 for it. Harvey Viles testified that decedent prior to going to the penitentiary gave his mother about $1,800 with which she bought the Leslie Street property; that she kept it in her possession until the decedent's return from the penitentiary; that about 1947 or 1948 the decedent sold the property and said that he received $5,000 for it. The decedent's mother, Minnie Viles, did not appear as a witness at the hearing herein and we have not been given the benefit of her testimony respecting the ownership of the Leslie Street property or its cost or selling price. Apparently as an explanation of her absence at the hearing, Inez Viles Whaley testified that Minnie Viles is 74 or 75 years of age; that she was under the care of a physician; that she had kidney and gall bladder trouble; that she could not see well; that she has had a stroke (the time of which was not stated) which has affected her mind, and that she gets upset "at the least little thing." Harvey Viles testified on direct examination that Minnie Viles has had a stroke (the time of which was not stated) *216 which has affected her mind and also her speech. However, on cross examination, he stated that "she runs a dance hall" in a property which she owns and which is situated just across the street from where she lives. He also stated that at the time of the hearing he had no employment but stayed with his mother who provided him with support from money obtained from her conduct of the dance hall. No explanation was offered as to how one, who was so infirm as pictured by the above testimony, was able to run a dance hall business. Apparently Minnie Viles was not as infirm as some of the testimony would indicate. Respecting the decedent's physical condition during the later years of his life, the following testimony was given by Edith Hyder on direct examination: "Q. Then after that, in '46 and '47 and '48, do you know what his physical condition was, whether he was well or sick? "A. Well, in the last part of that, I'll say he was a sick man, in the last part of '47 and '48, because he was married at that time to another woman, and I was married to another man." Inez Viles Whaley testified that decedent had cancer of the lung and that during the last three years before he died he *217 did not do anything and that he finally died of cancern of the lung. Harvey Viles testified that decedent, during the last two or three years before his death, had cancer of the lungs and was not able to work at all. In contrast to the foregoing testimony the decedent filed income tax returns for 1947 and 1948 in which he reported adjusted gross incomes of $1,480 and $4,680, respectively, from his business as a retail whisky dealer. While in the return for 1947 an expense deduction of $2,600 was taken for labor, no expense deduction was taken in the 1948 return for labor or anything else except for goods or merchandise sold. After having carefully considered all of the evidence of record bearing on the question and particularly the testimony of Edith Hyder, Inez Viles Whaley, Charles Chesney and Harvey Viles referred to above, we are unable to find that at the beginning of 1947 the decedent had on deposit with Edith Hyder $24,000 or any other sum or that he had on deposit with Inez Viles Whaley $15,000 or any other sum. Whatever may have been the situation with respect to the ownership, cost, selling price or year of sale of the property at 235 Leslie Street, the fact remains that *218 the decedent did not report any income from the sale of real estate in either his return for 1947 or his return for 1948. However, the respondent has determined that during 1948 the decedent sold an undesignated parcel of real estate for $3,700 which had cost him $3,500. By respondent's treatment of the cost of $3,500, he has allowed such amount for property the decedent had on hand at the beginning of 1947. The record is silent as to whether the above-mentioned undesignated property was the Leslie Street property. In view of the state of the record, and since the burden was upon the petitioners to show that the properties were different, if in fact they were different, we conclude that they were the same property, that the respondent's treatment of the cost of $3,500 was proper; and that the petitioners have failed to show that the decedent at any time had on deposit with Minnie Viles property of a greater amount than $3,500. The respondent has determined that decedent's living expenses were $4,000, $4,680 and $4,500 for 1947, 1948 and 1949, respectively. In support of their contention, that the decedent's living expenses were only $1,200 a year for the respective years, the petitioners *219 rely on the testimony of Harvey Viles. Although stating that he did not remember where the decedent lived during the years in question and that decedent's family consisted of himself and wife, Harvey Viles estimated that the decedent's living expenses during the years in question were about the same as his and that his living expenses were about $100 a month. Since the record is silent as to what, if any, family Harvey Viles had during the years in question, or where he lived, or what, if any, employment or business he had, his testimony affords no basis for a finding that the respondent's determination of the decedent's living expenses was erroneous. In view of what had been said above, we hold that the petitioners have failed to show that the respondent erred in determining that the decedent had unreported income of $14,349.32, $16,110.68 and $15,464.40 for 1947, 1948 and 1949, respectively, and in determining the deficiencies in tax accordingly. Although the petitioners have assigned error as to the respondent's determination of additions to tax for the years in question, which was denied by respondent, they have submitted no evidence and make no contention with respect to such *220 determination other than that the decedent did not have any unreported income for such years. In view of this, and since petitioners have not shown that the decedent did not have unreported income as determined by respondent, the determination of the additions to tax is sustained. Respecting the liability of Minnie Viles personally for the deficiencies in tax and additions to tax here involved, section 3466 of the Revised Statutes provides, in part, as follows: "Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors of administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied;" * * * Section 3467 of the Revised Statutes provides as follows: "Every executor, administrator, or assignee, or other person, who pays, in whole or in part, any debt due by the person or estate for whom or for which he acts before he satisfies and pays the debts due to the United States from such person or estate, shall become answerable in his own person and estate to the extent of such payments for the debts so due to the United States, *221 or for so much thereof as may remain due and unpaid." Section 3466 of the Revised Statutes gives priority to debts due to the United States over debts due to other creditors of the estate of an insolvent debtor. Section 3467 imposes personal liability upon an administrator who distributes the debtor's property to other creditors before satisfying the debts due the United States. Lillia L. Morris, 36 B.T.A. 516; John H. Beasley, 42 B.T.A. 275. The word "debt" as used in section 3466 of the Revised Statutes includes Federal income taxes. Price v. United States, 269 U.S. 492; Stripe v. United States, 269 U.S. 503. Under section 3467 of the Revised Statutes, one, who while an administrator of an estate pays other debts of the estate without satisfying the estate's debt for income tax due to the United States of which he has knowledge, despite his discharge by the probate court, is liable in his own person and estate to the extent of such unpaid tax. John H. Beasley, supra.Likewise, under section 3467 of the Revised Statutes, one, who while an administratrix of an estate pays other debts of the estate without satisfying *222 the estate's debt for income tax due to the United States of which she has knowledge and thereafter distributes the remainder to persons otherwise entitled to receive the same, is personally liable to the extent of such unpaid taxes. Lillia L. Morris, supra. In Irving Trust Co., 36 B.T.A. 146, it was held that a trustee in bankruptcy which distributed the assets of the bankrupt without first providing for the payment of a debt (income tax) due to the United States was not personally liable under section 3467 of the Revised Statutes where it appeared that the trustee was not chargeable with knowledge of the debt. It was there said: "'It is only when the assignee has notice of the claim of the government that he incurs personal liability for making distribution of the estate without providing for the claim.' United States v. Barns, 31 Fed. 705. The claim may be listed in the schedules of the bankrupt, notice may be given to the trustee, or the trustee may learn of the debt in some other way. If the trustee has knowledge of the debt, it matters not how that knowledge was obtained. The trustee can not disregard or ignore the debt, and if he *223 does, his breach of duty renders him liable personally. United States v. Kaplan, 74 Fed. (2d) 664. 'It is enough if the trustee be in possession of such facts as that a faithful and fair discharge of his duty would put him on inquiry.' United States v. Clark, 25 Fed. Cases 447, 451. But he is not personally liable for a tax without notice which should put a reasonably prudent man upon inquiry. Livingston v. Becker, 40 Fed. (2d) 673; United States v. Eyges, 286 Fed. 683. No case is cited which holds a fiduciary personally liable where he was not chargeable with knowledge of the debt due to the United States." The foregoing was quoted with approval in Lillia L. Morris, supra, respecting the chargeability of an administratrix with knowledge of a debt (income tax) owing by the decedent. In view of the foregoing the immediate question is whether, for the purposes of section 3467 of the Revised Statutes, Minnie Viles is chargeable with knowledge of the deficiencies in tax and additions to tax here involved. In May 1950 revenue agent Thomas contacted Minnie Viles with respect to the tax liability of the decedent and *224 examining his books or records, but so far as could be ascertained the decedent maintained no books or records. In his answers in the proceedings of Harvey Viles and Edith Viles Whaley, the respondent affirmatively alleged that distributions of property from the decedent's estate were made on June 13, 1950, and on July 2, 1951, to those petitioners as beneficiaries of the estate of the decedent. The allegations were admitted in the respective replies filed in those proceedings. Nothing was stated, either in the answers or in the replies, as to the amounts distributed on either of the stated dates. A copy of "CLAIMS FILED IN THE OFFICE OF THE COUNTY COURT CLERK and ORDER FIXING FEES, APPROVING FINAL SETTLEMENT AND DISCHARGING ADMINISTRATRIX" in the matter of the decedent's estate was placed in evidence. That instrument discloses that two distributions - partial and final - were made to beneficiaries of the estate. Although the dates of the distributions are not shown in the instrument, the affirmative allegations in the respondent's answers and the admissions in the replies thereto in the proceedings of Harvey Viles and Edith Viles Whaley place the dates of the distributions to those *225 petitioners as June 13, 1950 and July 2, 1951. Accordingly, we conclude that the partial distributions to them, in the amount of $3,000 each, were made on June 13, 1950, and the final distributions, in the amount of $773.86 each, were made to them on July 2, 1951. Other than showing that distribution of the decedent's estate was completed on July 3, 1951, the record is silent as to when the partial distributions and final distributions were made to the five children of a deceased brother of the decedent. Aside from the county court's allowance on July 3, 1951, of a fee of $1,000 to Minnie Viles as administratrix and a fee of $1,500 to her attorneys, claims filed against the estate totaled $8,397.09 of which claims totaling $3,168.55 were filed during the period February 17, 1950 through March 23, 1950, and claims totaling $5,228.54 were filed during the period July 1950 through October 13, 1950. Other than indicating that all allowable claims against the estate were settled by July 3, 1951, the record is silent as to when any of the claims were paid. From the foregoing it appears that shortly after the revenue agent contacted her about the tax liability of the decedent and his books *226 and records, Minnie Viles distributed a total of $6,000 to Inez Viles Whaley and Harvey Viles. Subtracting that amount from the amount of the total assets of the estate leaves assets amounting to $15,433.13 which were in the hands of Minnie Viles on or about July 15, 1950, when the revenue agent informed her of the deficiencies in tax and additions to tax involved herein and advised her that no distribution should be made of the remaining assets of the decedent's estate until the estate's liability therefor had been settled. Despite the fact that no settlement or payment of the deficiencies in tax and additions to tax had been made, Minnie Viles completed distribution of the decedent's estate on July 3, 1951. In view of the foregoing, it is apparent that before she completed distribution of the estate Minnie Viles had actual knowledge of the deficiencies totaling $14,897.15 here in controversy. Since at the time she acquired knowledge of the deficiencies she held assets of the estate in an amount in excess of the total deficiencies, she is liable under section 3467 of the Revised Statutes in an amount equal to the total deficiencies in controversy, namely, $14,897.15. The respondent's *227 determination with respect to this issue is sustained. Since the record shows that Inez Viles Whaley and Harvey Viles each received distributions of property from the decedent's estate in the amount of $3,773.86, thus rendering the estate unable to pay the deficiencies in controversy, they are liable as transferees of the assets of the estate of the decedent for the deficiencies in question to the extent of the amount of property so received. Accordingly, the respondent's determination on this issue is sustained. Decisions will be entered for the respondent. Footnotes
1. The correct total of disbursements as listed is $23,559.96 or $2,126.83 in excess of the $21,433.13 shown as total receipts. Since disbursements could not exceed receipts, it is apparent that the disbursements contain duplication of an item or items. Claims filed against the estate as listed in an exhibit placed in evidence total $8,397.09, of which claims totaling $3,168.55 were filed during the period February 17, 1950, through March 23, 1950, and claims totaling $5,228.54 were filed during the period July 19, 1950, through October 13, 1950. The total of claims filed $8,397.09, administratrix fee $1,000, attorneys' fee $1,500 and distributions to beneficiaries of the estate $11,321.58 is $22,218.67 or $785.54 in excess of total receipts shown as $21,433.13, thus indicating that some claim or claims were disallowed in whole or in part or that there was duplication in listing claims, or possibly both.↩