LEROY K. NEW, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4709–64. Filed August 9, 1967.

*John J. Rochford,* for the petitioner.
*Dennis J. Fox* and *George P. Adinamis,* for the respondent.

FORRESTER, *Judge:* The respondent has determined deficiencies in the income tax of William J. Cunningham, deceased, as follows:

| 1939 Code year | Income tax deficiency | Sec. 291(a), delinquency penalty | Sec. 293(a), negligence penalty |
| --- | --- | --- | --- |
| 1948 | $250.00 | $11.06 | $12.50 |

| 1954 Code year | Deficiency | Sec. 6651(a), delinquency penalty | Sec. 6653(a), negligence penalty |
| --- | --- | --- | --- |
| 1956 | $183.48 | $45.87 | $9.17 |
| 1957 | 183.83 | 45.96 | 9.19 |
| 1958 | 1,388.51 | 347.13 | 69.43 |

Under section 6901(a)(1)(B) of the Internal Revenue Code of 1954,[1] and section 3467 of the Revised Statutes (31 U.S.C. sec. 192), respondent has determined that such deficiencies are the personal liability of the petitioner, as fiduciary of the Estate of William J. Cunningham, deceased, and that they are to be assessed against petitioner.

Respondent has now conceded the net liability remaining for 1948, consequently only the years 1956, 1957, and 1958 remain for our consideration.

Petitioner denies that any taxes are owed by the estate and further denies personal liability for any unpaid taxes.

FINDINGS OF FACT

An orally stipulated fact is so found. The petitioner, Leroy K. New (Leroy), is an attorney who has practiced law and had his residence in and near Indianapolis, Ind., at all relevant times. He holds himself out as an expert on Indiana probate practices, has had considerable experience in the handling of probate administration and has handled a number of estates in which Federal taxes were involved. At the time of trial he was the chief trial deputy of the Marion County, Ind., prosecuting attorney.

Leroy's brother, Edward F. New, Jr. (Edward), has practiced law since 1947 and is also experienced in the handling and administration of estates. At the time of trial he was judge of the Hamilton County Circuit Court in Indiana.

On or about August 27, 1961, William J. Cunningham died intestate and on or about August 29, 1961, the Probate Court of Marion County, Ind., appointed the Merchants National Bank & Trust Co. of Indianapolis, Ind. (hereinafter called the bank), administrator of Cunningham's estate. Neither Leroy nor Edward had ever known Cunningham.

During the month of September 1961, Roma Boyd Cunningham, claiming to be the common-law wife of the deceased, retained Leroy and Edward to represent her interests in connection with his estate. Considerable litigation took place and on about January 18, 1962, the bank was, by order of said Probate Court, replaced by Leroy as substituted administrator. Leroy then retained Edward as attorney for the estate, and Edward continued to serve as the attorney for Roma Boyd Cunningham.

Less than 60 days later a settlement was reached among the claimants to the estate, and pursuant to a decree of the said Probate Court,

---

[1] All further references, unless otherwise noted, are to the Internal Revenue Code of 1954.

Leroy distributed assets valued at \$18,220 to Roma Boyd Cunningham on March 12, 1962, and an equal amount to Helen Foley Cockrum, decedent's niece, on March 8, 1962. The entire remainder of the estate was used to satisfy administration charges, including attorney and administrator's fees and debts, leaving the estate unable to pay Federal income taxes due and owing by the decedent.

A total of \$48,482.74 was distributed, and on May 7, 1962, after all the estate assets were distributed, Leroy submitted his final account, and prayed for and received his full and final discharge from such Probate Court.

During the period of probate no formal claim was filed in the Cunningham estate for Federal income taxes; however, Leroy knew that the 6-month period allowed for the filing of claims in a decedent's estate by the Indiana statutes did not apply to claims of the United States. In handling other estates it had been Leroy's practice to advise with the surviving spouse as to whether any Federal taxes were owing, and his experience included cases in which he had then contacted the Internal Revenue Service, the office of which was 2 blocks from his office, to "find out just what their records showed, agree on what he [decedent] owed and pay it."

Paul E. Rawley was the trust officer of the bank who was personally in charge of the administration of the Cunningham estate until the bank was removed as administrator on January 18, 1962, and in addition he had known William J. Cunningham during his lifetime since Cunningham had been a beneficiary of two trusts administered by the bank. Rawley advised both Leroy and Edward that decedent had not filed Federal income tax returns for the last 5 years of his life, and that the bank had made rough tax computations, using one exemption, and believed that the Cunningham estate owed Federal income taxes for the years 1957 through 1960 of about \$4,000 or \$5,000.

Leroy and Edward began having conferences with representatives of the bank as soon as they had been employed by Roma Boyd Cunningham. There were many such meetings both before and after Leroy was appointed administrator and the bank was removed from that office on about January 18, 1962. The men usually representing the bank at such meetings and conferences were: Paul E. Rawley, the trust officer; Russell J. Ryan, Jr., and Patrick J. Smith, attorneys for the bank; and Ron Baker, an assistant trust officer of the bank. These employees and attorneys for the bank told Leroy and Edward at each such conference that in their opinion the Cunningham estate owed Federal income taxes for a good many years preceding Cunningham's death in 1961 in the amount of \$4,000 to \$5,000, and the years 1957

through 1960 were specifically mentioned. As put by Edward: "I think they repeated it each time there was a meeting until the last and final meeting, * * *."

Charles D. Babcock was the Indianapolis attorney who represented Helen Foley Cockrum as the principal claimant to Cunningham's estate, opposed to Roma Boyd Cunningham. He was so employed near the end of January 1962, and thereafter told one or both of the News that the only way he would allow his client to settle her claim would be upon a dismissal of her motion for a new trial, which had been filed to resist the removal of the bank as administrator. He told the News that he took this position because of the possible contingent Federal income tax liability of the Cunningham estate and so that his client could get her money "free and clear of these liens and encumbrances and taxes."

Ted B. Lewis, a partner of Charles D. Babcock and also representing Helen Foley Cockrum at the above-described conferences with Leroy and/or Edward, confirmed that at such meetings the possible contingent liability of the Cunningham estate for Federal income taxes of approximately $4,000 was discussed.

During William J. Cunningham's life the bank kept records of all properties and investments which it handled for him or for his benefit and these records were preserved during all relevant times. The bank, however, neither kept nor was aware of any records made by or for William J. Cunningham pertaining to income or receipts by him of anything coming to him from property held in his own name or from any source other than the bank.

At about the time of the distributions of $18,220 each to Roma Boyd Cunningham and to Helen Foley Cockrum, or very shortly thereafter, Leroy and Edward examined all of the records at the bank pertaining to William J. Cunningham and there examined, *inter alia*, a canceled voucher for about $26,300 payable to and indorsed by him, and dated in 1957 or 1958. Also, Edward admitted while testifying that the bank's records during the late 1950's showed income paid to William J. Cunningham of about $700 for 1 year and of about $1,100 for another year and that his brother, Leroy, also saw all these records.

Russell J. Ryan, Jr., was one of the attorneys who had represented Helen Foley Cockrum before the bank was removed as administrator on about January 18, 1962. He represented the bank thereafter in connection with the settlement negotiations conducted on behalf of Roma Boyd Cunningham by Leroy and Edward. In March 1962 and shortly before the March 12, 1962, date on which Leroy distributed assets valued at $18,220 to Roma Boyd Cunningham, either Leroy or Edward

handed Ryan an undated and unsigned instrument reading in pertinent part as follows:

STATE OF INDIANA } ss.   IN THE MARION PROBATE COURT
COUNTY OF MARION

IN THE MATTER OF THE ESTATE } Estate Docket E61–1133
OF WILLIAM J. CUNNINGHAM, deceased.

### Petition for Instructions

Comes now Leroy K. New, Administrator herein, and respectfully petitions for instructions of this Court to your Administrator with respect to a certain "Settlement Agreement" proposed and presented to this Court in the above captioned cause * * * for this Court's approval and authorization to your Administrator to execute the same.

＊     ＊     ＊     ＊     ＊     ＊     ＊

If it is the intent and purpose of the agreement that the interests of Roma Cunningham and Helen Cockrum in the estate of the deceased did vest at the date of death then both interests would vest subject to unpaid Federal Income Taxes, interest and penalties of the deceased, estimated to be in excess of $5,000.00 by Merchants National Bank & Trust Company, a former Administrator herein. The United States of America should be protected herein by obtaining a clearance from the Internal Revenue Department as to both vested interests.

＊     ＊     ＊     ＊     ＊     ＊     ＊

Respectfully submitted,

_____

*Administrator of the Estate of*
*William J. Cunningham, deceased*

Respondent has determined herein that no Federal income tax returns were filed for William J. Cunningham, the deceased, for the years 1956, 1957, and 1958, and that he received net taxable income in such years as follows (all figures rounded):

|  | 1956 | 1957 | 1958 |
|---|---|---|---|
| Net rental income | $1,400 | $1,250 | $50 |
| Distributive share trust income | 850 | 900 | |
| Net dividend income after $50 exclusion | 200 | 300 | 300 |
| Long-term capital gain on one-third interest in property sold (sale price $23,150, less basis of property and expenses $8,150) | | | 7,500 |
| Total | 2,450 | 2,450 | 7,850 |
| Less dividends-received credit | −11 | −15 | −11 |
| Total | 2,439 | 2,435 | 7,839 |

In computing income taxes due on such determined amounts respondent allowed William J. Cunningham, deceased, one exemption credit under section 151. Respondent has now conceded that William J. Cunningham, deceased, was entitled to two exemptions for each of the years 1956, 1957, and 1958.

The petitioner has denied that any income taxes or additions thereto are owed by the Estate of William J. Cunningham, deceased, for the years in issue, but even though records were readily available to him, his offers of proof were limited to hearsay evidence and evidence which was objectionable under the best evidence rule. After objections had been sustained, this evidence was offered and admitted for the sole purpose of showing petitioner's state of mind, and consequently he has failed his burden, and we uphold the Commissioner's determination regarding the taxes and additions thereto for the years now in issue of the Estate of William J. Cunningham, deceased.

The Commissioner determined further that petitioner was personally liable for such amounts under section 6901(a)(1)(B) and this is the sole issue now remaining before us. Such section provides in pertinent part:

SEC. 6901. TRANSFERRED ASSETS.

(a) METHOD OF COLLECTION.—The amounts of the following liabilities shall, * * * be assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred:

    (1) INCOME, ESTATE, AND GIFT TAXES.—

       *       *       *       *       *       *       *

    (B) FIDUCIARIES.—The liability of a fiduciary under section 3467 of the Revised Statutes (31 U.S.C. 192) in respect of the payment of any tax described in subparagraph (A) from the estate of * * *, the decedent, * * *

Revised Statutes section 3467 (31 U.S.C. sec. 192) reads in pertinent part:

Sec. 192. Liability of fiduciaries.

Every * * * administrator * * * who pays, in whole or in part, any debt due by the * * * estate * * * for which he acts before he satisfies and pays the debts due to the United States from such * * * estate, shall become answerable in his own person and estate to the extent of such payments for the debts so due to the United States, or for so much thereof as may remain due and unpaid. * * *

and this must be read in the light of Revised Statutes section 3466 (31 U.S.C. sec. 191), which provides that whenever an estate is insufficient to pay all of deceased's debts that those due to the United States shall be first satisfied.

The central question in this case is whether Leroy, as administrator, knew of the debts due to the United States and arising out of decedent's income tax liabilities for the years 1956, 1957, and 1958, or if he was in possession of such facts as that a faithful and fair discharge of his duty would put him on inquiry. In other words, was he *chargeable* with knowledge of the debt to the United States.

Petitioner would have us limit our inquiry to actual knowledge on his part. The law requires no such limitation, but we observe that the facts here present would probably compel us to the conclusion that petitioner was "answerable in his own person and estate" even if it did.

Petitioner on brief largely ignores the central issue, contenting himself with several peripheral arguments, none of which are meritorious. He argues or implies that no personal liability can attach to him or his estate because no formal claim on behalf of the United States had been filed in the Probate Court, nor had any formal claim been made by the Commissioner before Leroy was discharged by the Probate Court on May 7, 1962. That the May 7, 1962, order of the Probate Court "fully and completely * * * [discharging and releasing Leroy] from any further duties herein as such administrator" fully protects him from personal liability for these taxes, and that he cannot be charged with any actual or constructive notice of the liability of the estate for these taxes because such liability was neither in being nor definite in amount at the time of his discharge.

These same peripheral questions have been considered by various courts on countless occasions and uniformly held to lack merit. We reach the same conclusion. See *Irving Trust Co.*, 36 B.T.A. 146; *Viles* v. *Commissioner*, 233 F. 2d 376, affirming a Memorandum Opinion of this Court; *United States* v. *Clark*, 25 Fed. Cas. 447; *United States* v. *Barnes*, 31 Fed. 705. Also see Rev. Rul. 66–43, 1966–1 C.B. 291.

As stated by the U.S. Court of Appeals for the Sixth Circuit in *Viles* v. *Commissioner*, *supra* at 379–380:

Petitioners contend that the rule is restricted to taxes which have been assessed and does not include a claim for taxes, as in the present case, which has not been officially approved in a liquidated amount. * * *

\* \* \* \* \* \* \*

In the present case, all the facts giving rise to the taxes had occurred. Whatever tax liability existed by reason thereof was past due and in default. It had become an accrued liability. * * * [Citing cases.] Formal assessment by the Commissioner was not necessary to establish liability. * * * [Citing cases.] The taxes may be disputed as a matter of law, but they are in no way contingent upon the happening of a later event. While ultimate liability and the exact amount thereof were not yet determined, and in fact were contested by the taxpayer, the same is often true even after the formal assessment by the Commissioner. * * *

It was not necessary for the Government to appear in or become a party to the probate court proceedings and its priority was not affected by the state court's judgment. * * * [Citing cases.]

We return then to the only real issue which is present in this case, i.e., whether petitioner has satisfied his burden of proving (*L. T. McCourt*, 15 T.C. 734) that under the facts here present he was not chargeable with knowledge of the debts to the United States.

In *Irving Trust Co., supra,* we stated at page 148:

the courts have held, in interpreting section 3467, that in order to render a trustee personally liable, it must appear that the trustee is chargeable with knowledge of the debt due to the United States. * * * The claim may be listed in the schedules of the bankrupt, notice may be given to the trustee, or the trustee may learn of the debt in some other way. If the trustee has knowledge of the debt, it matters not how that knowledge was obtained. The trustee can not disregard or ignore the debt, and if he does, his breach of duty renders him liable personally. *United States* v. *Kaplan,* 74 Fed. (2d) 664. "It is enough if the trustee be in possession of such facts as that a faithful and fair discharge of his duty would put him on inquiry." *United States* v. *Clark,* 25 Fed. Cases 447, 451. * * *

The case of *United States* v. *Clark, supra,* which we cited in *Irving Trust Co.* is surprisingly close to the instant case on its facts as is demonstrated by this excerpt (p. 451):

It appears in evidence, that at the time of the assignment, the defendant was informed by Gilbert Stuart that he was surety for Joseph B. Stuart in a bond to the United States, and that he believed the bond was broken. This was sufficient notice, and he is from that time chargeable with the duty which the law imposed on him, to give a preference to the United States in the distribution of Gilbert Stuart's property. It was his duty to make inquiry at the proper office, to see what the debt was, and to pay it. * * * As to the objection urged on behalf of the defendant, that until judgment against Gilbert Stuart the surety, the defendant could not know the amount for which Gilbert Stuart would be liable, as the amount might be reduced by Gilbert Stuart on the trial; the defendant in this action may now have the same benefit. He might, if he could, show the debt of the United States reduced to any extent, in the same manner as Gilbert Stuart could have done in the action against him.

In our view, the record in the instant case leaves no room for doubt that before he made the distributions and payments out of the Cunningham estate, Leroy was in possession of more than enough facts and notice as that a faithful and fair discharge of his duty should have put him on inquiry.[2] We deem it unnecessary to review the many factors in our findings which compel us to this conclusion.

Petitioner protests that he in fact made such inquiry but the record belies his statement. At one point Leroy testified that he made an independent search regarding William J. Cunningham's income and found none except that which came to him through the bank, but he did not say whom he talked to or what he did in making this investigation except to say that in addition to examining the bank's books he talked with some people in Crawfordsville, Ind., and there examined "the records" to determine whether there had been income from a downtown rental property. He also stated that he had had a hearing as to the value of this property with testimony under oath by Paul

---

[2] This case is unlike the situation which existed in *United States* v. *Vibradamp Corporation,* 257 F. Supp. 931 (S.D. Cal. 1966), where the defendant had notice of the possible liability 10 years before he became executor of the estate and where it was not shown that he remembered the possible liability during his administration. In the present case, the record shows that full consideration was being given to the possibility of income taxes due by the petitioner at the time the estate was distributed.

E. Rawley. Neither the "people," the "records," nor the character of the "hearing" are anywhere identified.

This Crawfordsville property is apparently the property which was sold in 1958 and which, according to respondent's determination, produced a long-term capital gain of $7,500 for William J. Cunningham in that year. Leroy contends that his independent investigation revealed that the tax base on this property was $100,000, which was more than it brought on the 1958 sale. Leroy testified that he learned this at a hearing in the Probate Court in October 1961 in the Cunningham estate, but we are not enlightened as to how this "fact" was learned nor was any documentary evidence offered.

Such "investigation and inquiry" in no way satisfies petitioner's duty. If a fiduciary is put on inquiry, the fact that he inquires wrongly or haphazardly is not enough and is no defense. To absolve petitioner because his inquiry turned out to be inadequate would be to reward the careless fiduciary and to put a premium on rapid cursory investigations. Once a fiduciary is put on notice sufficient to put a reasonably prudent person on inquiry, he thereafter pursues a unilateral inquiry at his peril. Any other conclusion would make the fiduciary the final arbiter of what the estate owed in tax, a result entirely nullifying all effect of 31 U.S.C. sec. 192.

Leroy chose to make a unilateral inquiry in the instant case, even though the offices of the Internal Revenue Service were located only 2 blocks from his office in Indianapolis, and he is bound by the consequences of his choice.

*Decision will be entered under Rule 50.*