**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Thomas W. MOORE, Jr., Assignee for Benefit of Creditors of Emsco Screen Pipe Company of Texas, et al., Defendants-Appellants.**

**No. 73-2951.**

United States Court of Appeals, Fifth Circuit.

July 26, 1974.

Thomas Osa Harris, Houston, Tex., for defendants-appellants.

Hellen M. Eversberg, Asst. U. S. Atty., Houston, Tex., Roger Wesley, Kathryn H. Baldwin, General Claims Section, Civ. Div., U. S. Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before JONES, THORNBERRY and COLEMAN, Circuit Judges.

JONES, Circuit Judge.

The facts from which this controversy arose were stipulated. In June, 1966, Emsco Screen Pipe Company of Texas entered into separate contracts with the Department of the Navy, the Department of the Army and the Defense Supply Agency for materials and supplies to be furnished thereafter. Emsco defaulted. The Navy terminated its contract on August 31, 1966. The Army terminated on December 6, 1966, and Defense Supply on October 19, 1966. Emsco made a voluntary assignment for the benefit of its creditors on October 20, 1966, to Thomas W. Moore, Jr. It was stipulated that "All of the . . . . claims were finalized[1] as to exact amounts after the aforesaid assignment." The assets in the hands of the assignee were insufficient to discharge all claims in full. The United States brought an action against the assignee and asserted priority under 31 U.S.C.A. § 191[2]. The district court concluded that the statute gave priority and entered judgment for the United States. The assignee has appealed.

The question to be decided is whether there were "debts due to the United States" from Emsco at the time it made its assignment for the benefit of creditors. The statute providing priority and the phrase "debts due" are not new. The present statute is not very different from the version incorporated in the revised statute.[3] The phrase is, it seems, included in an Act of Congress of 1797. See Prince v. Bartlett, 12 U.S. (8 Cranch) 431, 3 L.Ed. 614. The word "debt" has been many times defined and given many varied meanings. The definitions range from the duty to return a social courtesy to legal obligations of

---

1. *"finalize* to put into final form; to complete,

   "Usage: *Finalize* is closely associated with the language of bureaucracy in the minds of many careful writers and speakers and is consequently avoided by them." American Heritage Dictionary, 1969, p. 492. As used in the stipulation the word means determined and agreed upon.

2. "Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed." 31 U.S.C.A. § 191.

3. "Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority hereby established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed." R.S. § 3466.

many kinds. 26 C.J.S., p. 1, Debt, et seq. It has been said that a debt is an obligation to render something to someone else. In searching for the meaning of a term of so many different meanings in different contexts, we look to the meaning which it had when it was used in the first priority statute enacted by the Congress. At that time the basic law of all of the states, both substantive and procedural, was the common law. One of the common law actions was the action of debts. "The action of debt lies where a party claims the recovery of a debt, i. e. a liquidated or certain sum of money alleged to be due to him." Stephen, Principles of Pleading, 8th Am. Ed., p. 13, 1859. Such was the meaning of the word "debt" at the time of the earliest priority enactment. Such is the meaning of the word in the present statute. The United States had claims for damages for breach of contract. The stipulation expressly states that the claims were not finalized when the assignment was made. The claims were not for sums certain or which could be made certain by mathematical computation. They were not liquidated. Because the claims of the United States were not for fixed and certain amounts and presently payable, they were not debts due.

Since it is here determined that the claims of the United States were not "debts due," the judgment of the district court will be reversed and the cause remanded for further appropriate proceedings.

Reversed and remanded.

COLEMAN, Circuit Judge, Separate Opinion.

Judges Jones and Thornberry reach diametrically opposing results as to how the issue raised in this appeal should be decided. Their written opinions reflect the *precedential murkiness* surrounding the question. Neither cites a case squarely in point. Thus, they are left to reason from other premises. Obviously, I find myself similarly situated.

I am impressed by the fact that this statute has been on the books since March 3, 1797, and all along the language has remained the "same" or "equivalent", United States v. Oklahoma, 261 U.S. 253, 43 S.Ct. 295, 67 L.Ed. 638. Thus, it would appear, Congress has considered it adequate to the consummation of its fundamental purpose, which the courts have described as the "protection of the government's revenue". It has been content to rely on debts; it has not seen fit to expand the language to include "claims" or such like.

I note, too, that this statute is codified in the official version of the United States Code, United States Government Printing Office, 1971, Chapter 6 of Title 31, under the heading, "Debts Due By, or To, The United States".

Stripped of language inapplicable to the issue which must be decided, 31 U. S.C., § 191 may be read as follows:

"Whenever any person indebted to the United States is insolvent * * * *, the debts *due* to the United States shall be first satisfied." (emphasis added).

In other words, there must not only be a "debt", but it must be "due".

Let us now look at the case.

In its brief the Government says, "The original *claims* were against the assignee and Emsco for *breach of contract*" (emphasis mine). When did the "claim" ripen into a "debt due"? My answer to this has to be, "not until the amount of the damages for the breach had been ascertained by someone with the appropriate jurisdiction to make a determination binding on both the claimant and the defendant".

The contract which ultimately gave rise to this "debt" (or claim, as the case may be) was made in June, 1966. The contract was an obligation, according to its own terms, but I doubt that either in 1797 or today it could be "liberally construed" to be a debt. The default spawned a claim for breach of the contract, but, again, I cannot construe a

claim to be a debt, although it most certainly may ripen into one, as it did here. A claim cannot be a "debt due" until the amount has been ascertained. The assignment for the benefit of creditors was made on October 20, 1966. I have no hesitancy in saying that on that date the United States was not the owner of a debt due from Emsco. It had only a claim. To this point, therefore, I am in agreement with the views expressed by Judge Jones.

I read Massachusetts v. United States, mentioned in Judge Thornberry's opinion, to mean that priority is to be determined as of the date of the insolvency, not retroactively. The amount owed by Emsco as damages for its default was not finally ascertained until 1973, about seven years after the insolvency.

I, therefore, concur in the reversal of the judgment below and remand for further proceedings.

THORNBERRY, Circuit Judge (dissenting):

In this case we are called upon to construe the meaning of "debts due to the United States" as used in 31 U.S.C.A. § 191 (hereinafter the "Priority Statute"). In selecting among the various definitions of "debt" that have been applied in varying contexts, the majority inexplicably turns to the highly technical definition of the common law action of debt. In so doing the majority fails to construe the statute, in accordance with guidance from the Supreme Court, breaks with prior judicial interpretation without discussing the relevant cases, and creates an unexplained and unwise deviation from the interpretation of the term under the Bankruptcy Act, despite the analogous factual bases for application of the two statutes. Therefore, with deference, I dissent.

The Priority Statute is founded on the public policy of securing an adequate revenue to sustain public burdens and discharge the public debts. United States v. State Bank of North Carolina, 1832, 6 Pet. (31 U.S.) 29, 8 L.Ed. 308; Small Business Administration v. Mc-

Clellan, 1960, 364 U.S. 446, 81 S.Ct. 191, 5 L.Ed.2d 200; City of Sherman v. United States, 5 Cir. 1968, 400 F.2d 373; Viles v. Commissioner of Internal Revenue, 6 Cir. 1956, 233 F.2d 376. The statute is to be liberally construed in order to effectuate that purpose. United States v. State Bank of North Carolina, *supra*; Bramwell v. United States Fidelity & Guaranty Co., 1926, 269 U.S. 483, 46 S.Ct. 176, 70 L.Ed. 368; United States v. Emory, 1941, 314 U.S. 423, 62 S.Ct. 317, 86 L.Ed. 315; United States v. Gotwals, 10 Cir. 1946, 156 F.2d 692; Lakeshore Apartments, Inc. v. United States, 9 Cir. 1965, 351 F.2d 349. By adopting a narrow, technical definition of "debt" so as to defeat the United States' priority, the majority, it seems to me, flies in the teeth of these well established general principles of construction.

The few cases that have directly considered whether the Priority Statute applies to unliquidated obligations also point toward an affirmative answer. The strongest case support for the majority's position is Massachusetts v. United States, 1948, 333 U.S. 611, 68 S. Ct. 747, 92 L.Ed. 968, where the Court held that the option of an assignee for the benefit of creditors to pay state unemployment compensation taxes and take credit against federal taxes was cut off by the insolvency of the debtor. In rationalizing this result, the Court appeared to adopt a narrow definition of "debt" for purposes of the Priority Statute.

> [I]t is at least doubtful on the statute's wording that obligations wholly contingent for ultimate maturity and obligation upon the happening of events after insolvency can be said to fall within the reach of "debts due" as of the time of insolvency.

333 U.S. at 626–627, 68 S.Ct. at 756. In footnote 26, the Court explained further.

> [The fact that] all of the decisions sustaining the priority were for debts clearly due and owing, adds force to the clear inferences implicit in the statute's wording, viz., that Congress

not only created a conclusive priority attaching as of the time of insolvency but in doing so drew the line for its operation close to, if not at, the commonly accepted meaning of "debt" as distinguished from other forms of obligation.

68 S.Ct. at 756–757. The *Massachusetts* case does not directly support the majority's result in this case, however, since there the Court's primary concern was the contingency of the very fact of liability. In our case, all the events necessary to fix liability for the excess cost of reprocurement had occurred prior to insolvency, as the majority opinion makes clear. This liability was not contingent in any sense; it was merely unliquidated in amount. Therefore it was not the sort of obligation excluded from the coverage of the Priority Statute in *Massachusetts.*

Two cases have given priority to government claims that were wholly unliquidated at the time of insolvency. In King v. United States, 1964, 379 U.S. 329, 85 S.Ct. 427, 13 L.Ed.2d 315, the Seeley Tube & Box Company filed a petition for reorganization under Chapter XI of the Bankruptcy Act. Soon thereafter the United States notified Seeley that it intended to terminate two contracts between Seeley and the Picatinny Arsenal due to Seeley's default. King, Seeley's president, was appointed as distributing agent. He distributed the bulk of the assets with court approval before the United States liquidated its claim by reletting the contracts at a higher cost. As a consequence, there were insufficient funds remaining to pay all of the Government's claim. Under these circumstances the Court held King's estate liable for the unpaid portion because the Government's claim, though unliquidated at the time of insolvency, had been entitled to its statutory priority. The implicit holding that an unliquidated claim may be a "debt" within the Priority Statute so long as it is capable of liquidation is not directly controlling here, despite the identity of factual settings, since it was not a dis-

puted issue in the case, King having admitted the Government's priority in oral argument. *See* United States v. L. A. Tucker Truck Lines, Inc., 1952, 344 U.S. 33, 73 S.Ct. 67, 97 L.Ed. 54; United States v. Mitchell, 1926, 271 U.S. 9, 46 S.Ct. 418, 70 L.Ed. 799; Webster v. Fall, 1925, 266 U.S. 507, 45 S.Ct. 148, 69 L.Ed. 411. Nevertheless the *King* case provides some support for the proposition that an unliquidated claim may be a "debt" within the Priority Statute, as the district court in our case noted.

Finally, in United States v. Barnes, C.C., S.D.N.Y.1887, 31 F. 705, the court held that a claim of the United States had been entitled to its priority despite the fact that the amount of the claim was the subject of pending litigation both at the time of adjudication of bankruptcy and of distribution of the debtor's assets. The court said plainly that unliquidated claims of the Government are entitled to priority.

> It is established by many adjudications, in which the meaning and effect of these provisions have been discussed, that such priority extends to all classes of debts, whether liquidated or unliquidated, joint or several, legal or equitable . . . .

*Id.* at 707. The antiquity of the case, coupled with its explicit reliance on prior adjudications, undercuts the majority's assertion that its narrow definition was "the meaning of the word 'debt' at the time of the earliest priority enactment." On the contrary, a broad and liberal interpretation of the term was the rule from the first, a rule from which the majority departs today.

The Bankruptcy Act's analogy also points strongly toward allowance of priority for claims that are unliquidated as of the time of insolvency. In relevant part, the Act provides that

> The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be . . . (5) debts owing to any person, including the

United States, who by the laws of the United States i[s] entitled to priority . . . .

11 U.S.C.A. § 104(a). The Act also provides that

Debts of the bankrupt may be proved and allowed against his estate which are founded upon . . . (8) contingent debts and contingent contractual liabilities . . . .

11 U.S.C.A. § 103(a). Unliquidated claims are also provable and allowable, so long as the amount of the claim can be fully liquidated or estimated within the time set by the court. 11 U.S.C.A. § 93(d); 1 Collier Bankruptcy Manual, ¶ 57.11 (2d ed. 1973).

Both the Bankruptcy Act and the Priority Statute apply to disposition of assets that are insufficient to meet all of the debtor's liabilities. The issue under both statutes is whether obligations to the United States will be first satisfied in full or only satisfied in the same proportion as other obligations. The public policy of securing an adequate revenue so as to sustain public burdens and discharge public debts applies equally under both statutes. The Government is entitled to fifth priority in Bankruptcy Act proceedings for debts unliquidated at the time of insolvency solely by virtue of the existence of the Priority Statute, which is the only law of the United States giving priority to debts owing to the United States within the meaning of 11 U.S.C.A. § 104(a). 1A Collier Bankruptcy Manual, ¶ 64.501 (2d ed. 1973). It seems to me that Congress has clearly shown what it means when it uses the term "debts" in this factual context in § 63 of the Bankruptcy Act, 11 U.S.C.A. § 103, and that definition clearly includes the sort of unliquidated obligation involved in this suit, so long as the claim can be liquidated or estimated, as it was in this case, within a reasonable time so as to avoid undue delay in distributing the debtor's assets to the creditors. I think we should apply this entirely sensible reading of the term absent some good reason to deviate, and no good reason, in my opinion, has been offered.