## UNITED STATES *v.* MOORE ET AL.

No. 74–687.   Argued October 15, 1975—Decided December 2, 1975

BURGER, C. J., delivered the opinion for a unanimous Court.

*Harriet S. Shapiro* argued the cause for the United States.   On the briefs were *Solicitor General Bork, Acting Assistant Attorney General Jaffe, Gerald P. Norton, Robert E. Kopp,* and *Larry R. O'Neal.*

*Thomas Osa Harris* argued the cause and filed a brief for respondents.

MR. CHIEF JUSTICE BURGER delivered the opinion of the Court.

We granted certiorari to decide whether obligations of an insolvent debtor arising from default in the performance of Government contracts, occurring before an assignment for the benefit of creditors, are entitled to the statutory priority for "debts due to the United States" when the amount of the obligation was not fixed at the time of the assignment. We hold that the obligations, even though unliquidated in amount when the insolvent debtor made the assignment, are entitled to the statutory priority accorded debts due the United States under Rev. Stat. § 3466, 31 U. S. C. § 191, and we reverse.

(1)

The facts are not in dispute. In June 1966 respondent Emsco Screen and Pipe Company of Texas, Inc., contracted with the United States in three separate contracts to supply to the Navy, the Army, and the Defense Supply Agency certain fabricated items at an aggregate agreed price of $310,296. Emsco subsequently advised the Navy that it could not perform the contracts without an advance of money not yet due under the terms of the contracts; the Government was unwilling to make the advance. The Navy treated its contract as terminated on August 31, 1966. Emsco repudiated the Army contract, and the Army notified Emsco of its intent to treat the contract as terminated during the same month, although formal termination was not made until December 6, 1966. The Defense Supply Agency terminated its contract with Emsco on October 19, 1966, for failure to deliver.

Respondent Emsco made a voluntary assignment of all its assets, totaling $55,707.28, on October 20, 1966, to respondent Thomas W. Moore, Jr., as assignee for the

benefit of creditors. The company at that time owed the city of Houston approximately $6,000, and it owed more than $68,000 to the private creditors who consented to the assignment. Thus the claims of the private creditors alone exceeded all known corporate assets of the debtor.

The United States did not consent to the assignment, but filed proof of claims with the respondent Moore. The amount of the Government's claim, after reprocurement of the contract goods and negotiations with respondent Moore, was eventually set at $51,680, exclusive of interest. Respondent Moore refused to accord these claims priority under Rev. Stat. § 3466, 31 U. S. C. § 191, which provides:

> "Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

The United States then sued respondents Moore and Emsco in District Court. That court found the amount owed under the three defaulted contracts to be in excess of $67,000, including interest, and held that § 3466 afforded priority status to them as "debts due to the United States."

The Court of Appeals reversed, with one judge dissenting, holding that the claims of the United States were not, at the time of the assignment for creditors, amounts

certain and then payable and hence not "debts due" entitled to statutory priority. 497 F. 2d 976 (CA5 1974). To define this term, the court looked to the limits of a common-law action for debt, which permitted recovery of only liquidated obligations—"sums certain or which could be made certain by mathematical computation." *Id.,* at 978. One judge concurred separately, concluding that to have priority the claim of the United States must be one ascertained in amount prior to assignment, by a tribunal having jurisdiction to bind the contracting parties. Judge Thornberry dissented; he relied on *King* v. *United States,* 379 U. S. 329 (1964), and other holdings to the effect that Congress intended to give special status and protection to claims of the Government and the statute was to be construed to accomplish that objective. *Small Business Administration* v. *McClellan,* 364 U. S. 446 (1960); *United States* v. *Emory,* 314 U. S. 423 (1941); *Bramwell* v. *U. S. Fidelity & Guaranty Co.,* 269 U. S. 483 (1926). The dissent viewed the existence of an obligation as determinative, even though the extent of the obligation was unliquidated at the time of the assignment.

### (2)

The statute at issue is almost as old as the Constitution, and its roots reach back even further into the English common law; the Crown exercised a sovereign prerogative to require that debts owed it be paid before the debts owed other creditors. 3 R. Clark, Law of Receivers § 669, p. 1223 (3d ed. 1959). Many of the States claim the same prerogative, as an inherent incident of sovereignty. *Pauley* v. *California,* 75 F. 2d 120, 133 (CA9 1934); *People* v. *Farmers' State Bank,* 335 Ill. 617, 167 N. E. 804 (1929); *In re Carnegie Trust Co.,* 206 N. Y. 390, 99 N. E. 1096 (1912); *State* v. *Bank of Maryland,* 6 Gill & Johns. 205, 26 Am. Dec. 561 (Md.

1834). The Federal Government's claim to priority, however, rests as a matter of settled law only on statute. *Price* v. *United States,* 269 U. S. 492, 499–500 (1926); *United States* v. *State Bank of North Carolina,* 6 Pet. 29, 35 (1832).

The earliest priority statute was enacted in the Act of July 31, 1789, 1 Stat. 29, which dealt with bonds posted by importers in lieu of payment of duties for release of imported goods. It provided that the "debt due to the United States" for such duties shall be discharged first "in all cases of insolvency, or where any estate in the hands of executors or administrators shall be insufficient to pay all the debts due from the deceased . . . ." § 21, 1 Stat. 42. A 1792 enactment broadened the Act's coverage by providing that the language "cases of insolvency" should be taken to include cases in which a debtor makes a voluntary assignment for the benefit of creditors, and the other situations that § 3466, 31 U. S. C. § 191, now covers. 1 Stat. 263.

In 1797 Congress applied the priority to any "person hereafter becoming indebted to the United States, by bond or otherwise . . . ." 1 Stat. 515. Then in 1799, Congress gave the priority teeth by making the administrator of any insolvent or decedent's estate personally liable for any amount not paid the United States because he gave another creditor preference. Act of Mar. 2, 1799, 1 Stat. 627, 676. The 1797 and 1799 Acts have survived to this day essentially unchanged, as 31 U. S. C. §§ 191 and 192 (Rev. Stat. §§ 3466 and 3467).

The priority statute serves the same public policy as the Crown's common-law prerogative. As Mr. Justice Story wrote for the Court in 1832, the priority proceeds from "motives of public policy, in order to secure an adequate revenue to sustain the public burthens and discharge the public debts. . . . [A]s that policy has

mainly a reference to the public good, there is no reason for giving to [the statute] a strict and narrow interpretation." *United States* v. *State Bank of North Carolina, supra,* at 35. For nearly two centuries this Court has applied the statute with this policy in mind. In *State Bank* itself, 6 Pet., at 38, the Court rejected the bank's argument that bonds payable only in the future were not "debts due to the United States" because they were not presently payable, using language apt for today's case as well:

> "No reason can be perceived, why, in cases of a deficiency of assets of deceased persons, the legislature should make a distinction between bonds which should be payable at the time of their decease, and bonds which should become payable afterwards. The same public policy which would secure a priority of payment to the United States in one case, applies with equal force to the other; and an omission to provide for such priority in regard to bonds payable in futuro, would amount to an abandonment of all claims, except for a pro rata dividend. In cases of general assignments by debtors, there would be a still stronger reason against making a distinction between bonds then payable and bonds payable in futuro; for the debtor might, at his option, give any preferences to other creditors, and postpone the debts of the United States of the latter description, and even exclude them altogether."

For similar reasons, and using similar language, the courts have applied the priority statute to Government claims of all types. See 3A J. Moore & R. Oglebay, Collier on Bankruptcy ¶ 64,502 (14th ed. 1975); see also Plumb, The Federal Priority In Insolvency: Proposals for Reform, 70 Mich. L. Rev. 3, 10–12 (1971). Indeed, under the decisions of this Court, "[o]nly the plainest

inconsistency would warrant our finding an implied exception to the operation of so clear a command as that of § 3466." *United States* v. *Emory,* 314 U. S., at 433.

### (3)

Respondent Moore argues that in this case we should read the statute narrowly, to accord priority only to those claims that are liquidated and certain in amount at the time an assignment for the benefit of creditors is made. Three factors lead us to a different result.

First, nothing on the face of the statute, and no potential difficulty in administering it, require that a distinction be drawn for this purpose between liquidated and unliquidated debts. The statute's express command is that "debts due the United States shall be first satisfied"; its language looks to the time of payment rather than the moment at which the assignment of obligations is made. Respondent Moore concedes here, as he has throughout this litigation, that the debt owed the United States is a valid claim against the debtor's assets; he argues only that the United States should be paid pro rata, as a general creditor. While the concession does not dispose of the case, it does dispose of any argument that giving priority to debts unliquidated at the time of assignment would unduly delay distribution of the debtor's estate, since payment pro rata would occasion a like delay. Moreover, if the claim can be paid on a pro rata basis, Congress could, as we hold it did in this statute, provide for priority payment.

Second, respondent Moore urges and the Court of Appeals held that the words "debts due to the United States" must be read to mean only those obligations that would on the date of the assignment have given rise to a common-law action for debt. But we see no persuasive reason why the technical requirements of a common-

law pleading should be read into the statute.[1] We look
instead to the provisions of the several Bankruptcy Acts
that Congress has enacted, as the Court has for the defi-
nition of other phrases used in the statute here at issue.
See, *e. g., United States* v. *Oklahoma,* 261 U. S. 253
(1923); *United States* v. *Emory, supra,* at 426. The
Bankruptcy Acts focus more precisely on the problems of
insolvency and are more apt an analogy to a statute giv-
ing the United States priority in payments to be made
from insolvents' estates.

The first Bankruptcy Act, passed in 1800, was a near
contemporary of the priority statute. It permitted cred-
itors to prove not only debts liquidated at the time of
bankruptcy, but some other debts that became certain
during the proceedings.[2] The debtor would receive a
discharge of these debts "as if such money had been due
and payable before the time of his or her becoming
bankrupt." § 39, 2 Stat. 32. The Acts of 1841 and
1867 contained similar provisions.[3] The current Bank-

---

[1] Respondent Moore relies upon some language in *United States* v.
*State Bank of North Carolina,* 6 Pet. 29, 39 (1832): "Wherever the
common law would hold a debt to be debitum in presenti, solvendum
in futuro, the statute embraces it just as much as if it were presently
payable." But the Court relied upon this common-law phrase to
hold that *at least* such debts were within the reach of the priority
statute; it certainly did not hold that any debts but these were
*excluded* from the statute. And the Court rested its decision upon
more than just this phrase. See *supra,* at 82, and *infra,* at 86.

[2] The Act of 1800, § 39, 2 Stat. 19, 32, provided that the "obligee
of any bottomry or respondentia bond, and the assured in any policy
of insurance, shall be admitted to claim, and after the contingency
or loss, to prove the debt thereon."

[3] The Act of 1841, § 5, 5 Stat. 440, 445, provided that contingent or
uncertain claims might be proved and paid when they became abso-
lute; debts payable in the future might also be proved, and paid with
an appropriate discount. The Act of 1867, c. 176, 14 Stat. 517,
allowed in § 19 proof of debts due and payable as of bankruptcy,

ruptcy Act permits proof of unliquidated claims, which will be allowed if they are liquidated or can reasonably be estimated soon enough that the distribution of the estate will not unduly be delayed. 11 U. S. C. §§ 103 (a)(8), (9), 93 (d).[4] The priority statute "is not to be defeated by unnecessarily restricting the application of the word 'debts' within a narrow or technical meaning," *Price* v. *United States,* 269 U. S., at 500, and to give "debts" a meaning more restrictive than the bankruptcy statutes have given it over 175 years would do just that.

Finally, the parties agree that this Court and other federal courts have regularly applied the priority statute to debts that in fact were unliquidated, although without discussing the precise issue before us in this case. See, *e. g.,* *King* v. *United States,* 379 U. S. 329 (1964); *United States* v. *National Surety Co.,* 254 U. S. 73 (1920); *United States* v. *Brunner,* 282 F. 2d 535 (CA10 1960); *United States* v. *Barnes,* 31 F. 705 (CCSDNY 1887). Respondent Moore relies on dicta in *Massachusetts* v. *United States,* 333 U. S. 611, 627 (1948), to the effect that "obligations wholly contingent for ultimate maturity and obligation upon the happening of events after insolvency" are not "debts due." But the obligation here, and in the cases cited, was fixed and independent of "events after insolvency"; only the precise amount of that obligation awaited future events.[5]

---

debts payable in the future, and unliquidated contract damages claims: "[T]he court may cause such damages to be assessed in such mode as it may deem best, and the sum so assessed may be proved against the estate. No debts other than those above specified shall be proved or allowed . . . ."

[4] Title 11 U. S. C. § 1 (14) defines a debt as "any debt, demand, or claim provable in bankruptcy."

[5] In *Massachusetts,* the Court held that insolvency cut off ,a debtor's right to elect to pay the State rather than the Federal

Given the consistent application of the priority statute to fixed but unliquidated obligations, Mr. Justice Story's remarks in *State Bank*, 6 Pet., at 39–40, are particularly appropriate:

> "It is not unimportant to state, that the construction which we have given to the terms of the act, is that which is understood to have been practically acted upon by the government, as well as by individuals, ever since its enactment. Many estates, as well of deceased persons, as of persons insolvent who have made general assignments, have been settled upon the footing of its correctness. A practice so long and so general, would, of itself, furnish strong grounds for a liberal construction; and could not now be disturbed without introducing a train of serious mischiefs. We think the practice was founded in the true exposition of the terms and intent of the act: but if it were susceptible of some doubt, so long an acquiescence in it would justify us in yielding to it as a safe and reasonable exposition."

For these reasons, the judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

---

Government an unemployment compensation tax. Permitting post-insolvency election would mean that the priority statute applied to contingent obligations, the Court reasoned, and that result would be anomalous. The "contingency" in *Massachusetts*, of course, was the debtor's election to pay someone other than the United States, and so defeat the obligation entirely. The present case is, as we note, quite different: liability *vel non* will be determined on the facts as they exist at the time of the assignment for the benefit of creditors; subsequent events cannot defeat the obligation.