UNITED STATES of America, Plaintiff-Appellee,

v.

Robert M. COLE, Defendant-Counterclaimant-Appellant,

Group II Commercial Real Estate, Inc., a California corporation, Defendant on Counterclaim.

No. 83–2238.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 14, 1984.

Decided May 15, 1984.

---

Kenneth L. Greene, Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Robert M. Cole, Cole & Cole, Inc., Davis, Cal., for defendant-counterclaimant-appellant.

Before HUG and FERGUSON, Circuit Judges, and STEPHENS,* District Judge.

HUG, Circuit Judge:

Robert M. Cole appeals the district court's order granting summary judgment to the United States in this action seeking satisfaction of a federal tax debt owed by Concord Smorgy Boys ("Concord Smorgy"). Cole, acting as escrow agent, held and disbursed funds he received as a result of the sale of Concord Smorgy's business. The summary judgment awarded the United States the funds remaining in escrow and held Cole personally liable under 31 U.S.C. § 3713 for Concord Smorgy's unpaid tax liability to the extent Cole paid other creditors out of the escrow fund ahead of the United States. We affirm in part and reverse in part.

## FACTS

Concord Smorgy was a corporation that operated a restaurant in Concord, California. The assets used in the business were owned in part by Concord Smorgy and in part by Robert A. Daggs Enterprises ("Daggs Enterprises"), another corporation. Robert Daggs was the sole shareholder of both Concord Smorgy and Daggs Enterprises.

On May 1, 1975, Daggs, acting on behalf of the two corporations owned by him, sold the assets of both corporations to Fairfield Smorgabob, Inc. ("Fairfield"). In addition, Daggs signed an agreement not to compete. At the time of the sale, Concord Smorgy was insolvent. All three entities, Concord Smorgy, Daggs Enterprises, and Daggs, assigned the proceeds from the sale of their assets to Robert Cole in escrow for the benefit of Concord Smorgy's creditors. Cole received $43,702.54 in escrow. Cole was to pay the funds to various creditors in the order provided in a supplemental agreement. The Government was not a party to this agreement.

At the time of this assignment to Cole for the benefit of creditors, Concord Smorgy was indebted to the United States for unpaid federal payroll taxes. By a letter dated June 5, 1976, the Internal Revenue Service notified Cole of this liability and advised him not to disburse the escrow funds until the taxes had been paid. Notwithstanding this notice, Cole paid $36,857.25 to other creditors. There now remains $6,845.29 in escrow.

## ANALYSIS

Under 31 U.S.C. § 3713(a)(1)(A)(i),[1] a claim of the United States Government is

---

\* The Honorable Albert Lee Stephens, Jr., Senior United States District Judge for the Central District of California, sitting by designation.

1. Section 3713(a) provides:
   (a)(1) A claim of the United States Government shall be paid first when—
   (A) a person indebted to the Government is insolvent and—
   (i) the debtor without enough property to pay all debts makes a voluntary assignment of property;
   (ii) property of the debtor, if absent, is attached; or
   (iii) an act of bankruptcy is committed; or

   (B) the estate of a deceased debtor, in the custody of the executor or administrator, is not enough to pay all debts of the debtor.
   (2) The subsection does not apply to a case under title 11.

   The current wording of the provision was enacted by Congress in 1982. Section 3713(a) is a revision of section 3466 of the Revised Statutes, 31 U.S.C. § 191 (1976 ed.). The revision was part of a codification of laws relating to money and finance. The House Report on the codification law emphasizes that no substantive change was intended by changes in terminology and style in the codification law. H.R.Rep. No. 97–

given first priority of payment when a debtor is insolvent and makes a voluntary assignment of property. Since the purpose of this priority is to secure adequate revenue to satisfy burdens on the federal treasury, the provision is given a liberal interpretation in order to effectuate this purpose. *United States v. Moore,* 423 U.S. 77, 81–82, 96 S.Ct. 310, 313, 314, 46 L.Ed.2d 219 (1975). An assignment for the benefit of creditors triggers the government's priority, and the assignee is required to pay the government's claim first. *Bramwell v. United States Fidelity Co.,* 269 U.S. 483, 489–490, 46 S.Ct. 176, 177–178, 70 L.Ed. 368 (1926); *United States v. Crocker,* 313 F.2d 946, 947 (9th Cir.1963).

> Where the debtor is divested of his property in one of the modes specified in the act, the person who becomes invested with the title is made trustee for the United States and bound first to pay its debt *out of the debtor's property.*

*United States v. Oklahoma,* 261 U.S. 253, 260, 43 S.Ct. 295, 298, 67 L.Ed. 638 (1923) (emphasis added).

■ Section 3713(b) [2] establishes personal liability for a representative of the debtor who pays other claimants before paying the claims of the federal government. The burden lies with those who argue that the government's priority does not apply to show that they are not within the provisions of section 3713. *See Bramwell,* 269 U.S. at 487, 46 S.Ct. at 177.

■ The section 3713 priority clearly applies to the proceeds from the sale of Concord Smorgy's assets, since Concord Smorgy owed the federal debt, despite assignment of the proceeds to Cole for the benefit of creditors. *See Moore,* 423 U.S. 77, 96 S.Ct. 310, 46 L.Ed.2d 219 (applying the priority to assets in the possession of an assignee for the benefit of creditors).

Cole, however, argues that the priority does not apply to property that Daggs and Daggs Enterprises contributed to the escrow fund. We agree. The section 3713 priority applies only to the property of the person owing the federal debt. *Oklahoma,* 261 U.S. at 260, 43 S.Ct. at 298; *Division of Labor Law Enforcement v. Stanley Restaurants,* 228 F.2d 420, 424 (9th Cir. 1955); *see Kennebec Box Co., Inc. v. O.S. Richards Corp.,* 5 F.2d 951, 952 (2d Cir. 1925) ("[I]t is elementary that what is available to pay the debts of any debtor must be the property of that debtor."). The Government argues that Concord Smorgy, Daggs Enterprises, and Daggs are a single economic unit, but the Government has failed to demonstrate why the separate corporate identity of Concord Smorgy should be disregarded. Thus, the section 3713 priority does not apply to the sale proceeds that Daggs and Daggs Enterprises contributed to the escrow fund.

■ The Government argues that the section 3713 priority should attach to all of the money in the escrow fund because the parties to the sale agreement made no attempt to allocate the sale proceeds. This is incorrect. Cole received $43,702.54 from Fairfield for the assets of Concord Smorgy, Daggs Enterprises, and Daggs. The parties to the sale acknowledged that the value of the Daggs Enterprises equipment purchased by Fairfield was $14,000. Daggs was paid $12,360 in return for a covenant not to compete. Thus, the proceeds from the sale of Concord Smorgy's assets amounted to the balance, $17,342.54. This is the maximum amount to which the Government is entitled to a priority under section 3713.

The Government has conceded that Cole properly paid $8,000 to choate lienholders, Trembath & McCabe, who enjoyed priority

---

651, 97th Cong., 2d Sess. 1–3, *reprinted in* 1982 U.S.Code Cong. & Ad.News 1895, 1895–97.

**2.** Section 3713(b) provides:

(b) A representative of a person or an estate (except a trustee acting under title 11) paying any part of a debt of the person or estate before paying a claim of the Government is

liable to the extent of the payment for unpaid claims of the Government.

Section 3713(b) is a revision of section 3467 of the Revised Statutes, 31 U.S.C. § 192 (1976 ed.). Congress revised this provision at the same time it revised section 3466 of the Revised Statutes, 31 U.S.C. § 191 (1976 ed.). *See* n. 1, *supra.*

ahead of the United States. The Government has also conceded that Cole has properly paid $500 to himself as escrow agent for administrative expenses. Since the proceeds from the sale of Concord Smorgy's assets amounted to only $17,342.54 and Cole properly paid $8,500 to other creditors ahead of the United States, the Government's priority claim amounts to $8,842.54.

Cole did not properly pay any other creditors ahead of the United States. Cole has not established that Contra Costa County had a choate lien justifying Cole's payment of Contra Costa's personal property taxes before paying the United States. *See United States v. Gilbert Associates*, 345 U.S. 361, 366, 73 S.Ct. 701, 704, 97 L.Ed. 1071 (1953); *Illinois ex rel. Gordon v. Campbell*, 329 U.S. 362, 370–371, 67 S.Ct. 340, 345–346, 91 L.Ed. 348 (1946). Similarly, Cole has not established that the State of California had a choate lien securing payment of sales taxes.

■ Cole paid $16,290.57 in sales taxes to the state of California. He argues that the sale proceeds equal to the amount of sales taxes owed by Concord Smorgy never became part of Concord Smorgy's assets subject to the section 3713 priority. Cole relies on Cal.Rev. & Tax.Code §§ 6811 and 6812 as the basis for this argument. Section 6811 provides that the buyer of a business shall withhold from the purchase price an amount to cover, *inter alia*, the sales taxes owed by the seller. Section 6812 provides that if the seller fails to withhold the purchase price as required, he will be personally liable for the amount owed to the extent of the purchase price.

Under the terms of the sales contract, Concord Smorgy did have an interest in the sale proceeds. Fairfield agreed to pay the seller the consideration, which the seller then assigned to Cole to pay claims against Concord Smorgy. The fact that Concord Smorgy assigned the sale proceeds indicates that it had an interest in the proceeds. In any event, the state priority in Cal.Rev. & Tax.Code §§ 6811 and 6812 cannot supersede the federal government's section 3713(a) priority. "The priority given the United States cannot be impaired or superseded by state law." *Oklahoma*, 261 U.S. at 260, 43 S.Ct. at 298; *see also In re Leslie*, 520 F.2d 761, 762 (9th Cir.1975) ("Conflicting priorities established by state law must yield upon the intervention of bankruptcy to superior federal law.").

Cole, however, analogizes the priority given California under Cal.Rev. & Tax. Code §§ 6811 and 6812 to the state's power to attach conditions to the transfer of liquor licenses. This court has held that a state may condition transfer of a liquor license upon payment of state taxes even though this results in a distribution of the sale proceeds different from the priorities established by federal bankruptcy law. *Matter of Professional Bar Co., Inc.*, 537 F.2d 339, 340 (9th Cir.1976). The court noted that "the problem is not so much one of priority of claims as one of defining the nature of the bankrupt's property to which the claims attach." *Id.* The court reasoned that the bankrupt's interest in the liquor license was limited to the residual value of the liquor license after state claims were satisfied.

Cole argues that Cal.Rev. & Tax.Code §§ 6811 and 6812 similarly limit Concord Smorgy's interest in the proceeds from the sale of the restaurant. He argues that California law defines the nature of property to which the section 3713 priority can attach and that this is limited to the residual value of the sale proceeds after state claims are satisfied. Cole's argument is unpersuasive. The rationale of *Professional Bar* is that since a liquor license is state-created property, the state can limit the value of the property by imposing conditions on its transferability. Superior federal law governs distribution priorities when the asset is not state-created. *Leslie*, 520 F.2d at 762–763. Concord Smorgy's restaurant business was not a state-created asset.

■ Under 28 U.S.C. § 1961, interest shall be allowed on any money judgment in a civil case. Although this case involves collection of a tax debt, it is not an action against the taxpayer or under the Internal

Revenue Code. Therefore, section 1961(a), and not section 1961(c)(1), governs the calculation of interest on the judgment. Under section 1961(a), interest on $8,842.54 amounts to $2.11 per day from the date of the entry of the district court's judgment on June 9, 1983.

## CONCLUSION

The judgment of the district court is reduced to $8,842.54 plus interest at the rate of $2.11 per day from June 9, 1983. Cole is personally liable to the extent there are not enough funds remaining in escrow to cover this judgment. Cole is not entitled to an award of attorney's fees.

AFFIRMED in part; REVERSED in part.