Benedetto A. CERILLI

v.

NEWPORT OFFSHORE, LTD.

No. 92–150–Appeal.

Supreme Court of Rhode Island.

May 10, 1993.

Milton Stanzler, Providence, for plaintiff.

Justin Shay, Cameron & Mittleman, Richard J. Welch, Tillinghast, Collins & Graham, Providence, for defendant.

Joseph M. Impagliazzo, Providence, for receiver.

## OPINION

MURRAY, Justice..

This case is before us on appeal by the United States of America, by and through the United States Department of Transportation Maritime Administration (MARAD), from a Superior Court order affirming the decision of coreceivers to disallow MARAD's priority claim of $257,400 in a state receivership proceeding. We deny MARAD's appeal and affirm the order of the Superior Court.[1]

---

1. This case is a small part of the receivership proceeding involving the original defendant, Newport Offshore, Ltd. For further background *see Cerilli v. Newport Offshore, Ltd.,* 612 A.2d 35 (R.I.1992).

The pertinent facts and the procedural history of this case are as follows. On October 3, 1988, MARAD entered into a written lease agreement with Newport Offshore, Ltd. (NOL). Pursuant to the lease, NOL agreed to provide berthing services for three United States Government-owned tankers for a period of three years, beginning on September 1, 1988, and ending on August 31, 1991. In return MARAD agreed to prepay the berthing costs for these three vessels at the beginning of each lease year.

The lease agreement also provided that MARAD could terminate the lease if MARAD sold or chartered the vessels to a third party as long as MARAD provided NOL with ninety-days notice of the termination. In the event MARAD terminated the lease, NOL agreed to return a pro rata portion of the payment that MARAD would advance at the beginning of each lease year. The lease provided that this reimbursement was to be based on the number of days remaining in the lease year following (1) the expiration of the ninety-day-notice period or (2) the date on which the vessels actually departed NOL's facilities, whichever occurred later.

On August 29, 1990, MARAD prepayed the amount owed for the 1990–91 lease year by advancing to NOL $474,500. A Superior Court justice, on September 17, 1990, placed NOL in receivership and appointed Milton Stanzler and Allan Shine as temporary coreceivers (coreceivers). Approximately one month later the Superior Court justice appointed these individuals as permanent coreceivers. The Superior Court justice authorized the coreceivers to continue the operation of NOL's business, and NOL did in fact continue to provide berthing services for MARAD's three vessels.

On November 16, 1990, approximately two months after the appointment of the coreceivers, MARAD completed a sale of the three vessels to private parties, and on the same date MARAD complied with the ninety-day-notice requirement by sending a letter to NOL notifying it of the termination of the lease agreement. All three vessels departed NOL's facilities within the ninety-day-notice period. Pursuant to the reimbursement provision of the lease, NOL owed MARAD $257,400; MARAD arrived at this figure by multiplying the remaining days in the lease year following the termination of the lease by the per diem rate for the berthing of the vessels.

On February 12, 1991, MARAD filed a proof of claim for the above-stated amount of $257,400 with the coreceivers pursuant to Rule 66 of the Superior Court Rules of Civil Procedure. MARAD also demanded first-priority payment of this $257,400 amount pursuant to 31 U.S.C. § 3713(a) (1988), which in many instances entitles the United States Government to first priority in payment of debts collected outside title–11 bankruptcy proceedings. *See* 31 U.S.C. § 3713(a)(2).

The coreceivers concluded that MARAD's claim did not meet the requirements of § 3713(a), and accordingly, the coreceivers disallowed MARAD's claim for priority. MARAD objected to this disallowance, and a hearing was held on this issue before a Superior Court justice. The Superior Court justice allowed MARAD's general claim for $257,400. The Superior Court justice, however, affirmed the coreceivers' disallowance of MARAD's claim for priority. The effect of the Superior Court justice's ruling was to place MARAD's claim for $257,400 on equal footing with the claims of all other unsecured creditors.

The sole issue on this appeal is whether MARAD's claim for $257,400 is entitled to priority pursuant to § 3713(a), which states in pertinent part:

"(a)(1) A claim of the United States Government shall be paid first when—

(A) a person indebted to the Government is insolvent and—

(i) the debtor without enough property to pay all debts makes a voluntary assignment of property;

(ii) property of the debtor, if absent, is attached; or

(iii) an act of bankruptcy is committed[.]"

■ Pursuant to this statutory language, the United States Government is entitled to first priority in payment of a claim if: (1) a debt is due to the United States Government, (2) by a person who is insolvent, and (3) that person either voluntarily assigns property, an absent debtor has his or her property attached, or an act of bankruptcy is committed. *In re Metzger*, 709 F.2d 32, 33–34 (9th Cir.1983).

■ It is also clear that in order to qualify for first priority in payment under 31 U.S.C. § 3713(a), the debt owed to the United States Government must be in existence at the time the insolvent person assigns the property, an absent debtor has his or her property attached, or an act of bankruptcy is committed. 709 F.2d at 34–35.

*In re Metzger* illustrates this requirement. In *Metzger* Metzger performed legal services for his client in the form of criminal-defense representation. *Id.* at 33. On January 17, 1978, the client submitted the criminal case to a trial judge on stipulated facts. *Id.* Ten days after the case was submitted to the trial judge, the client assigned to Metzger his interest in a shipping vessel. On February 16, 1978, the trial judge sentenced the client to a five year sentence and ordered the client to pay the United States Government a fine in the amount of $45,000. *Id.* The United States attempted to collect the $45,000 by obtaining first priority in the shipping vessel the client had assigned to Metzger. *Id.*

The United States Court of Appeals for the Ninth Circuit concluded that at the time of the assignment of the shipping vessel,

the act that triggered the application of 31 U.S.C. § 3713(a), the client was not indebted to the United States. The client in *Metzger* only became indebted to the United States at the time of sentencing, which occurred after the assignment of property. The court held that priority was established at the time of the assignment of the property and that debts owed to the United States that arise after the act that triggers the statute are not entitled to priority. 709 F.2d at 34–35.

United States Supreme Court cases interpreting 31 U.S.C. § 191 (1976), the statute that preceded § 3713(a) and which contains language substantially similar to § 3713(a), support the conclusion that debts that arise after the act of bankruptcy that triggers the statute are not entitled to priority in payment.[2] The Supreme Court has interpreted § 191 and held that the federal priority "attaches from the time the insolvent debtor transfers or loses control over his property." *Massachusetts v. United States*, 333 U.S. 611, 617 n.8, 68 S.Ct. 747, 751 n.8, 92 L.Ed. 968, 974 n.8 (1948); *Illinois v. Campbell*, 329 U.S. 362, 373 n.14, 67 S.Ct. 340, 346 n.14, 91 L.Ed. 348, 356 n.14 (1946) (stating that the priority of the United States attaches upon appointment of the receiver).

In addition the Supreme Court has indicated that debts contingent on events that occur after priority attaches are not entitled to first priority in payment. In *Massachusetts* the Supreme Court stated in dicta that

"it is at least doubtful on the statute's wording that obligations wholly contingent for ultimate maturity and obligation

---

**2.** 31 U.S.C. § 191 (1976) provided in pertinent part:

"Priority established.

Whenever any person indebted to the United States is insolvent * * * the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

The explanatory notes to 31 U.S.C. § 3713 indicate that Congress amended the § 191 version of the statute to eliminate unnecessary and surplus words and to have the statute read more consistently. Because it does not appear that the enactment of § 3713 accomplished a substantive change in the priority statute, we believe that cases which interpret § 191 are helpful in our resolution of this case. *See United States v. Excellair, Inc.*, 637 F.Supp. 1377, 1394 n.15 (D. Colo.1986).

upon the happening of events after insolvency can be said to fall within the reach of 'debts due' as of the time of insolvency." 333 U.S. at 626–27, 68 S. Ct. at 756, 92 L. Ed. at 979.

*United States v. Moore,* 423 U.S. 77, 96 S.Ct. 310, 46 L.Ed.2d 219 (1975), further clarified the rule that debts arising after the act that triggers the application of § 191 are not entitled to priority. In *Moore* a party argued that debts unliquidated at the time of insolvency are not entitled to priority as "debts due" pursuant to the terms of § 191. The Supreme Court rejected this argument, and referring to the above-quoted language from *Massachusetts,* stated:

"Respondent Moore relies on dicta in *Massachusetts* * * * to the effect that 'obligations wholly contingent for ultimate maturity and obligation upon the happening of events after insolvency' are not 'debts due.' But the obligation here * * * was fixed and independent of 'events after insolvency'; only the precise amount of that obligation awaited future events." 423 U.S. at 85, 96 S. Ct. at 315, 46 L. Ed.2d at 226.

■ Pursuant to these cases, a court applying the federal priority statute must look to the time at which an insolvent person either assigns property, the property of an absent debtor is attached, or an act of bankruptcy is committed—to determine if a debt is due to the United States Government. If at the time of the act of bankruptcy or other event that triggers the statute a person owes a debt to the United States, with only the amount of the debt uncertain and unliquidated, the United States is entitled to priority. If, however, the existence of the debt obligation is dependent on events that occur after the act of bankruptcy, the United States is not entitled to priority pursuant to § 3713(a).

Both parties in this case agree that an act of bankruptcy was committed on September 17, 1990, the date that the Superior Court justice placed NOL in receivership. *Brown v. Coleman,* 318 Md. 56, 65, 566 A.2d 1091, 1095 (1989) (holding that the appointment of a receiver to liquidate an insolvent's business constituted an act of bankruptcy within the meaning of 31 U.S.C. § 3713(a)). In addition it is undisputed that NOL was insolvent at the time of the appointment of the coreceivers in this case.

The trial justice and the coreceivers, however, denied MARAD's claim for priority because on the date of the act of bankruptcy, September 17, 1990, NOL was not indebted to MARAD. The coreceivers argue that NOL did not become indebted to MARAD until, at the very earliest, November 16, 1990, the date that MARAD sold the tankers and notified NOL of the termination of the lease agreement. Indeed if MARAD had not sold the tankers to private parties and terminated the lease, NOL would have been required, through the direction of the coreceivers, to continue to provide berthing services until the end of August 1991, and MARAD would not have been entitled to any reimbursement. The trial justice apparently agreed with this reasoning and found "[t]hat there was no debt due by [NOL] to MARAD until after the appointment of the co-receivers on September 17, 1990." For this reason the trial justice sustained the coreceivers' disallowance of MARAD's claim for priority.

Although MARAD makes a number of points and cites a number of cases in its brief, MARAD raises primarily two arguments. First, MARAD argues that § 3713(a) "does not require that the indebtedness precede the act of bankruptcy which triggers application of the government's priority." According to MARAD, § 3713(a) only requires that there be an act of bankruptcy pertaining to a person indebted to the United States. MARAD contends that the text of § 3713(a) does not specifically require that the indebtedness be matured or "in place" at the time the act of bankruptcy is committed. MARAD suggests that given the broad remedial purpose of § 3713(a), this court should interpret § 3713(a) so as to grant the United States priority regarding claims that are contingent on events that occur after the act of bankruptcy that triggers the priority statute. In support of this argument, MARAD

cites the bankruptcy code, 11 U.S.C. § 101(4) (1988), which defines "claim" as a "right to payment, whether or not such right is * * * unliquidated * * * [or] contingent." MARAD also relies on the bankruptcy code because it authorizes the "allowance" of claims that are contingent at the time of the filing for bankruptcy. *See In re Gladding Corp.*, 20 B.R. 566, 567 (Bankr.D. Mass.1982).

It is important to note that MARAD's argument really addresses two different situations: (1) a situation in which the debt owed to the United States arises after the act of bankruptcy and (2) a situation in which the debt owed to the United States is in place at the time of the act of bankruptcy but contingent on post-act-of-bankruptcy events. The line between these two situations obviously is difficult to draw. As a matter of statutory interpretation, MARAD asserts that in either situation the United States Government is entitled to priority pursuant to § 3713(a). Focusing on this case, MARAD characterizes NOL's debt as "in place" at the time of the act of bankruptcy but contingent on MARAD's termination of the lease agreement, which occurred after the act of bankruptcy was committed.

■■■ We believe that the text of § 3713(a) and the direct case law on the subject contradict MARAD's assertion that claims that arise after the act of bankruptcy and claims that are contingent on post-act-of-bankruptcy events are entitled to priority. Section 3713(a)(1) states that the United States Government shall be paid first when "[a] person indebted to the Government is insolvent and * * * (iii) an act of bankruptcy is committed." Congress's use of the word "and" indicates that in order for the United States to qualify for priority, the indebtedness must be in place at the time the act of bankruptcy occurs. In addition the authorities interpreting § 3713(a) and its predecessor, § 191, indicate that claims contingent on post-act-of-bankruptcy events are not entitled to priority. *See In re Metzger*, 709 F.2d at 33–34 (interpreting § 3713(a)); *see also Moore*, 423 U.S. at 85, 96 S.Ct. at 315, 46 L.Ed.2d at 226 (interpreting § 191); *Massachusetts*, 333 U.S. at 626–27, 68 S.Ct. at 756, 92 L.Ed. at 979 (interpreting § 191).

We also do not find MARAD's reliance on the bankruptcy code to be persuasive. It is true that the Supreme Court has looked to the bankruptcy code to help interpret ambiguous portions of the federal priority statute. *Moore*, 423 U.S. at 84, 96 S.Ct. at 314, 46 L.Ed.2d at 225. We do not believe, however, that the bankruptcy code's "allowance" of contingent claims is dispositive of the case before us in light of the clear statutory language found in § 3713(a) and the direct case authority on the subject. We conclude that the United States is not entitled to priority regarding claims that arise after the act of bankruptcy or which are contingent on post-act-of-bankruptcy events.

■■ In addition to MARAD's argument that contingent claims and claims arising after the act of bankruptcy are entitled to priority, MARAD raises a second argument. MARAD maintains that even if § 3713(a) requires that a person be indebted to the United States Government at the time of the act of bankruptcy, MARAD satisfies this requirement in this case because at the time the Superior Court justice placed NOL in receivership, NOL was indebted to MARAD. MARAD cites *Moore* for the proposition that courts should give the federal priority statute a liberal construction to further the broad public purpose it serves: " 'to secure an adequate revenue to sustain the public burthens and discharge the public debts.' " *Moore*, 423 U.S. at 81, 96 S.Ct. at 313, 46 L.Ed.2d at 224 (quoting *United States v. State Bank of North Carolina*, 31 U.S. (6 Pet.) 29, 35, 8 L.Ed. 308, 310 (1832)). MARAD further argues that on the date of the act of bankruptcy MARAD had a right to payment based on the lease agreement with NOL. MARAD points out that the right to sell the tankers, terminate the lease, and recoup a portion of the advance payment made to NOL was a right solely within the control of MARAD and was exercisable at any time by MARAD. MARAD concludes that interpreting the statutory term "in-

debted to the Government" liberally, we should "deem" NOL indebted to MARAD on the basis of the right to payment found in the underlying lease agreement.

We believe that even when we interpret the term "indebted to the Government" in a liberal manner, NOL did not become indebted to MARAD until after the act of bankruptcy. The Supreme Court in *Moore* did not ask whether the United States had a contractual right to payment. The Supreme Court asked whether the right to payment was "fixed and independent of 'events after insolvency.'" *Moore,* 423 U.S. at 85, 96 S.Ct. at 315, 46 L.Ed.2d at 226. In this case MARAD's right to payment was contingent and dependent on MARAD's selling the tankers and terminating the lease agreement, an event that occurred after the act of bankruptcy. Accordingly NOL was not indebted to MARAD at the time of the act of bankruptcy, and MARAD is not entitled to first priority in payment regarding the claim for $257,-400.[3]

For these reasons we deny and dismiss MARAD's appeal and affirm the order of the Superior Court.

---

**3.** We also note that MARAD's reliance on *United States v. Excellair, Inc.,* 637 F.Supp. at 1394–95, is misplaced. The court in *Excellair* interpreted 31 U.S.C. § 3701(b), which defined the term "claim," as it is used in subchapter II of chapter 37 of title 31 of the United States Code, as including attempts by the United States to recoup "loans insured or guaranteed by the government." *Id.* The present case does not involve loan guarantees, and consequently *Excellair* is not applicable.