9 F.3d 1550
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Arnold Robert ABRAMS, et al., Plaintiff-Appellee,
v.
UNION BANK, et al., Defendants-Appellees.
Earle HAGEN, Assignee for the Benefit of Creditors of
Stephen H. Henry, Defendant-Appellee
v.
INTERNAL REVENUE SERVICE, Counter-defendant-Appellee
and
California Franchise Tax Board Counter-defendants-Appellees
and Dr. Robert M. Peck, as Trustee for the Robert M. Peck,
M.D. Inc., Defined Benefit Pension Trust; Ruth R.
Peck, Counter-defendants-Appellants.
Susie J. HENRY, Plaintiff-Appellee
v.
Ira REINER, et al., Defendants.
 No. 92-55304.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 31, 1993.
Decided Nov. 2, 1993.
 
 Before: TANG, CANBY, and BEEZER, Circuit Judges.
 
 
 1
 AMENDED MEMORANDUM*
 
 
 2
 Robert and Ruth Peck appeal the district court's summary judgment in favor of the Internal Revenue Service ("IRS"). The court concluded the IRS' claim to interpleader funds had priority over the Pecks' claim. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.
 
 
 3
 * Stephen Henry, an investment advisor, embezzled the Pecks' funds. On October 1, 1986, the Pecks, weary of Henry's excuses for not returning their money, sued Henry and attached his real property. On November 18, 1986, Henry made a general assignment of his assets for the benefit of creditors to Earle Hagen. Henry's assets were worth approximately $1,000,000 and his clients claimed the entire estate. In addition, Henry's wife held a promissory note signed by Henry for $305,000, and First Professional Bank had sued to collect a loan for $320,000 on which Henry had defaulted. After Henry was charged with and pleaded guilty to grand theft, the IRS asserted a claim for payment of unpaid taxes exceeding $4,000,000, and the Franchise Tax Board of California sought approximately $1,000,000 in unpaid state taxes.
 
 
 4
 By early 1989, Hagen had liquidated the estate and initiated an interpleader proceeding. The Pecks and the IRS, among others, stipulated to facts for the purpose of determining priority of claims to the funds. On cross-motions for summary judgment, the district court concluded the IRS' claim had priority over the Pecks' claim.
 
 II
 
 5
 We review the grant of summary judgment de novo. T.W. Elec. Serv., Inc., v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 629 (9th Cir.1987). Viewing the evidence in the light most favorable to the Pecks, we hold there are no genuine issues of material fact to be tried and the IRS is entitled to judgment as a matter of law. Id. at 630; Fed.R.Civ.P. 56(c).
 
 
 6
 * The Pecks contend the embezzled funds were not taxable income to Henry. Case law establishes, however, that Henry owed income taxes on the funds he embezzled. James v. United States, 366 U.S. 213 (1961); Cohen v. United States, 297 F.2d 760, 769 (9th Cir.), cert. denied, 369 U.S. 865 (1962).
 
 B
 
 7
 The IRS has a first-priority claim when a debtor who owes federal taxes is insolvent and "without enough property to pay all debts makes a voluntary assignment of property." 31 U.S.C. § 3713(a)(1)(A)(i). The Pecks contend § 3713 does not apply to the present case. We disagree.
 
 
 8
 The Pecks first argue that the IRS failed to prove Henry was insolvent when he transferred his assets to Hagen. The record shows, however, that when Henry made his assignment, the claims of his creditors went far beyond Henry's ability to pay. The assignment of all his assets was itself evidence of Henry's insolvency. See Bramwell v. United States Fidelity & Guaranty Co., 269 U.S. 483, 488 (1926) (noting statute applies when debtor's insolvency "is shown" in any of ways stated in statute). Because the insolvency statute "has reference to the public good" and "ought to be liberally construed," the burden lies with those who argue against the government's priority claims to show the statute does not apply. Id. at 487; see also United States v. Cole, 733 F.2d 651, 654 (9th Cir.1984). Once the IRS, as the party moving for summary judgment, demonstrated Henry's insolvency, the Pecks were obligated to "set forth specific facts showing that there [was] a genuine issue for trial." Fed.R.Civ.P. 56(e). The Pecks failed to present evidence of any kind demonstrating Henry was solvent. There was thus no triable issue of fact on Henry's solvency.
 
 
 9
 The Pecks further contend the transfer of Henry's assets was not a "voluntary assignment of property" within the meaning of § 3713 because the transfer did not divest Henry of absolutely all his property. This argument must be rejected under § 3713 and relevant case law. Henry transferred to Hagen "all of the property and assets of [Henry] of every kind and nature ... not exempt from execution." A transfer of assets is sufficient under the statute if it constitutes, as does Henry's transfer, a "general divestment of property." United States v. Hooe, 7 U.S. (3 Cranch) 73, 91 (1805). That Henry may not have been stripped bare of all his assets or have physically turned over some of the assigned property to Hagen makes no difference. Under the assignment, Hagen has the duty to administer Henry's entire estate for the benefit of the Pecks and other creditors. See 31 U.S.C. § 3713(b).
 
 C
 
 10
 The Pecks argue § 3713 excepts their lien against Henry's real property from impairment. Although the language of § 3713 admits of no exceptions to the statute, the United States Supreme Court has hinted for many years that a "specific and perfected" lien may have priority over the United States' claim. E.g., United States v. Vermont, 377 U.S. 351, 357-58 & n. 8 (1964); United States v. Gilbert Assocs., Inc., 345 U.S. 361, 365-66 (1953); United States v. Waddill, Holland, & Flinn, Inc., 323 U.S. 353, 355-60 (1945). We have stated that such an exception might exist. See Nesbitt v. United States, 622 F.2d 433 (9th Cir.1980), cert. denied, 451 U.S. 984 (1981). For purposes of this hypothetical exception, however, the Supreme Court has declared that "specificity" requires the lien claimant to take physical possession of the attached property before the debtor's voluntary assignment of assets. Gilbert Assocs., 345 U.S. at 366; Waddill, Holland & Flinn, 323 U.S. at 355. Because the Pecks did not have possession of the attached real property on the relevant date, their lien does not fall within the purported exception.
 
 III
 
 11
 The Pecks insist the Fifth Amendment to the U.S. Constitution "trumps" § 3713. Section 3713 does not offend the Fifth Amendment. It is rooted in the English common law and reflects the prerogative of the sovereign to require that debts owed to it be paid before the debts owed to other creditors. See United States v. Moore, 423 U.S. 77, 80 (1975). Section 3713 or a similar predecessor statute has been in effect almost since the country's formation, serving the important public policy of securing adequate revenue for the federal government. See id. at 81-82. Although its application may work a hardship on creditors other than the United States, § 3713 is not "merely arbitrary and capricious." Barclay & Co. v. Edwards, 267 U.S. 442, 450 (1924). Because the original version of § 3713 was enacted over two hundred years ago, its enactment did not result in a "taking" of the Pecks' lien interest; no pre-existing property right has been impaired by the subsequent enactment of a statute. See United States v. Security Indus. Bank, 459 U.S. 70, 78-82 (1982).
 
 IV
 
 12
 Because the IRS' claim exceeds the funds available to satisfy that claim, we need not address the Pecks' arguments regarding the priority of the Franchise Tax Board.
 
 
 13
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3